769 So.2d 345 (2000)
STATE of Florida, Petitioner,
v.
Sammy COTTON, Respondent.
Nathaniel Woods, Petitioner,
v.
State of Florida, Respondent.
Nos. SC94996, SC95281.
Supreme Court of Florida.
June 15, 2000.
Rehearing Denied September 14, 2000.
*346 Robert A. Butterworth, Attorney General, and Robert J. Krauss, Senior Assistant Attorney General, and Ronald Napolitano, Assistant Attorney General, Tallahassee, Florida, for Petitioner in No. SC94996.
James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Respondent in No. SC94996.
Nancy A. Daniels, Public Defender, Paula S. Saunders and Michael J. Minerva, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, Florida, for Petitioner in No. SC95281.
Robert A. Butterworth, Attorney General, James W. Rogers, Bureau Chief, Criminal Appeals, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, Florida, for Respondent in No. SC95281.

REVISED OPINION
LEWIS, J.
We have for review State v. Cotton, 728 So.2d 251 (Fla. 2d DCA 1998), and Woods v. State, 740 So.2d 20 (Fla. 1st DCA 1999),[1] both involving the Prison Releasee Reoffender Act, chapter 97-239, Laws of Florida, codified in part in former section 775.082(8), Florida Statutes (1997)(the "Act").[2] In Cotton, the district court affirmed the trial court's decision not to sentence Cotton, a qualifying defendant for whom the State sought sentencing under the Act, as a "prison releasee reoffender." In affirming Cotton's sentence, the Second District held that, where a defendant claims one of the circumstances set forth in section 775.082(8)(d)1, Florida Statutes, the trial court (not the prosecutor) has the responsibility to determine facts, and authority to exercise discretion, regarding whether or not to impose a mandatory sentence under the Act. See Cotton, 728 So.2d at 252.
In Woods, the defendant below (who also qualified for sentencing as a "prison releasee reoffender") argued that the Act was unconstitutional on its face. The First District disagreed, holding that the Act does not violate "the separation of powers clause of the Florida Constitution and the due process and equal protection clauses of both the United States and the Florida Constitutions." 740 So.2d at 24. In so holding, however, the First Districtcontrary to the Second District's construction determined that the State, rather than the trial court, has discretion to determine whether a defendant qualifying under the Act will be sentenced as a "prison *347 releasee reoffender." The First District, noting that its interpretation conflicted with Cotton,[3] certified[4] the following question as one of great public importance:

DOES THE PRISON RELEASEE REOFFENDER PUNISHMENT ACT, CODIFIED AS SECTION 775.082(8), FLORIDA STATUTES (1997), VIOLATE THE SEPARATION OF POWERS CLAUSE OF THE FLORIDA CONSTITUTION?
Id. at 25. We have jurisdiction. See Art. V, § 3(b)(3), (4), Fla. Const.

THE ACT'S EXCEPTION PROVISIONS
In arguing that the Act violates the separation of powers clause (article II, section 3, of the Florida Constitution), the defendant in Woods asserted that the Act "deprives the judiciary of all sentencing discretion, placing that discretion in the hands of the state attorney, who is a member of the executive branch." 740 So.2d at 22. The threshold question here, as framed by Judge Webster in Woods, is "whether the Act does, in fact, remove all (or substantially all) sentencing discretion from the judicial branch, placing it, instead, in the executive branch." Based upon the plain language of the Act, which is supported both by its legislative history[5] and by a subsequent clarifying amendment, we hold thatat least to the extent that the Act is properly construed to establish a mandatory minimum sentenceit does.
Prior to amendment, the Act provided, in pertinent part[6]:

*348 775.082. Penalties; mandatory minimum sentences for certain reoffenders previously released from prison.
. . . .
(8)(a) 1. "Prison releasee reoffender" means any defendant who commits, or attempts to commit:
. . . .
[enumerated criminal offenses, including]
g. Robbery;
. . . .
within 3 years of being released from a state correctional facility operated by the Department of Corrections or a private vendor.
2. If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:

. . . .
c. For a felony of the second degree, by a term of imprisonment of 15 years;
. . . .
(b) A person sentenced under paragraph (a) shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release. Any person sentenced under paragraph (a) must serve 100 percent of the court-imposed sentence.
(c) Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law.
(d)1. It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless any of the following circumstances exist:

a. The prosecuting attorney does not have sufficient evidence to prove the highest charge available;
b. The testimony of a material witness cannot be obtained;
c. The victim does not want the offender to receive the mandatory prison sentence and provides a written statement to that effect; or
d. Other extenuating circumstances exist which preclude the just prosecution of the offender.

2. For every case in which the offender meets the criteria in paragraph (a) and does not receive the mandatory minimum prison sentence, the state attorney must explain the sentencing deviation in writing and place such explanation in the case file maintained by the state attorney. On a quarterly basis, each state attorney shall submit copies of deviation memoranda regarding offenses committed on or after the effective date of this subsection, to the President of the Florida Prosecuting Attorneys Association, Inc. The association must maintain such information, and make such information available to the public upon request, for at least a 10-year period.
§ 775.082, Fla. Stat. (1997)(emphasis supplied). Thus, pursuant to the legislative scheme, it is the state attorney who invokes application of the mandatory sentencing provisions; the state attorney who must determine whether there are extenuating circumstances (three of which are specifically identified) precluding the "just prosecution of the offender" pursuant to the Act; and the state attorney who is held accountable by the Legislature to the *349 public in those instances where exceptions to prosecution under the Act are made.
Further, following the Cotton decision, the Legislatureby chapter 99-188, Laws of Florida (the "Three-Strike Violent Felony Offender Act")promptly amended the statute, thereby clarifying its intent with respect to the "exceptions" section. The amendment omitted subsections a., b., and c. of the former subsection (8)(d)1., providing instead:
It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided in this subsection.
Ch. 99-188, § 2, Laws of Fla. (codified in section 775.082(9)(d), Florida Statutes (1999))(emphasis supplied). Although the 1997 statute applies to these appeals, we accept the 1999 amendment as clarification of the Legislature's intent that, where a defendant qualifies as a "prison releasee reoffender," it is the state attorney, and not the trial court, who has the authority to determine (in the exercise of prosecutorial discretion) whether or not to seek sentencing under the Act. Cf. Finley v. Scott, 707 So.2d 1112, 1116-1117 (Fla.1998) (accepting amendment to section 61.30(1)(a), Florida Statutes, as clarifying legislative intent "that the trial court's decision as to a variant amount is to be based on these factors now listed in section 61.30(1)(a)")(citing Parole Comm'n v. Cooper, 701 So.2d 543 (Fla.1997), for the proposition that, in interpreting a statute, it is proper for the court to consider a subsequent amendment to it, if such amendment was enacted soon after a controversy regarding the statute's interpretation arose); Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985).

SEPARATION OF POWERS
Both Woods and Cotton argue that the Act as thus interpreted is unconstitutional. In making this argument, they focus on the Legislature's decision to include in the Act certain broad exceptions for the prosecutor's consideration. They urge that this provision encroaches on the judiciary's sentencing function, relying on the Court's decision in Seabrook v. State, 629 So.2d 129 (Fla.1993). Since the state attorney's broad charging discretion already embodies any "exception discretion," this argument is unpersuasive. Further, petitioners' reliance on Seabrook is misplaced.
In Seabrook, the petitioner specifically contended that the habitual felony offender statute violated separation of powers because it deprived the trial court of discretion not to sentence a defendant as a habitual felony offender. However, this Court had already determinedwithout reference to any separation of powers argument that, pursuant to that statute, trial judges have the discretion not to sentence a qualifying defendant as a habitual felony offender. See McKnight v. State, 616 So.2d 31 (Fla.1993) (adopting the rationale of King v. State, 597 So.2d 309, 314 (Fla. 2d DCA 1992), in which the Second District heldnot in the context of a separation of powers challengethat the trial court has the discretion "to exercise leniency and to sentence a defendant found to be an habitual felony offender or an habitual violent felony offender to a sentence less severe than the maximum sentence that is permitted by subsections 775.084(4)(a) or (b)"). Therefore, the Court in Seabrook determined that, since "petitioner's contention that the statute violated the doctrine of separation of powers" was based on the erroneous premise that the statute "deprived trial judges of such discretion," the contention "necessarily fail[ed]." 629 So.2d at 130. This conclusion is very different from its inverse: petitioners' argument that, had the habitual felony offender statute established a *350 mandatory minimum sentenceso that, where the State invoked the statute, the trial court would be compelled to sentence a qualifying defendant pursuant to the minimum penaltythat necessarily would have violated separation of powers. In fact, here, no one asserts that a mandatory minimum sentencing scheme violates separation of powers. Cf. Chapman v. United States, 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)(observing that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion").
The same logical disjuncture undermines Woods' attempt to distinguish this Court's decision in Young v. State, 699 So.2d 624, 625 (Fla.1997)(holding that "the decision to prosecute a defendant as an habitual offender is a prosecutorial function to be initiated at the prosecutor's discretion and not by the court"). Woods argues that the habitual offender statute is distinguishable for two reasons: first, because the Court (in Seabrook) construed it in such a way that the trial court retains discretion not to sentence a qualifying defendant pursuant to the statute, and second, because the statute, as amended, requires the prosecutor to develop uniform criteria for invoking its sanctions. Thus, Woods argues:
The Act contains no requirement that the state attorney adopt uniform criteria for its implementation as required by Section 775.08401, Florida Statutes (1998) for habitual offenders. The state's attempted analogy to the habitual offender criteria fails because the duty to adopt "uniform" written criteria in habitual offender sentencing is actually dissimilar to the mere after the fact reporting called for in the Act. The phrase "extenuating circumstances" is, moreover, so vague as to defy "uniform" application either intra- or inter-circuit.
However, close examination of the habitual offender statute discloses that these are distinctions without a difference. First (based upon its legislative history), the habitual felony offender statute was construed as never having been intended to be a mandatory minimum sentencing scheme. See Burdick v. State, 594 So.2d 267, 269 (Fla.1992)(confirming its prior construction of "shall" in habitual felony offender statute to be discretionary rather than mandatory, based upon legislative history)(citing State v. Brown, 530 So.2d 51 (Fla.1988)). Here, in contrast, it is clear that the Act, where invoked, is intended to operate as a mandatory minimum statute. Second, even though the Legislature passed an amendment to the habitual felony offender statute requiring the prosecutor to adopt uniform criteria[7] to be used when deciding to pursue violent career criminal, habitual felony offender or habitual violent felony offender sanctions, that amendment specifically provides that "[a] deviation from the adopted criteria is *351 not subject to appellate review." Ch. 95-182, Laws of Fla. (effective October 1, 1995).
This is consistent with the general principle that, absent a compelling equal protection argument, the exercise of such prosecutorial discretion is not generally subject to judicial review. See Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)(observing that, "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); United States v. Mitchell, 778 F.2d 1271, 1276 (7th Cir.1985)(stating that, regardless of whether the government violated the "Petite Policy"an "internal guideline for the exercise of prosecutorial discretion"such alleged violation "does not create a substantive right for the defendant which he may enforce, and is not subject to judicial review")(emphasis supplied); see also Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489-90, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)(observing that, "[e]ven in the criminal-law field, a selective prosecution claim is a rara avis ... [and] the decision to prosecute is particularly ill-suited to judicial review"). This principle has been recognized in the similar context of pretrial diversion programs. See Cleveland v. State, 417 So.2d 653, 654 (Fla.1982) (holding that "the pretrial diversion decision of the state attorney is prosecutorial in nature and, thus, is not subject to judicial review"); State v. Turner, 636 So.2d 815, 816-17 (Fla. 3d DCA 1994) (holding that the trial court's order placing the defendant in a pretrial intervention program and dismissing the prosecution over the State's objection represented "an unjustified judicial interference with the prosecutorial function," based upon the appellate court's recognition of the "explicit statutory admonition that, whenever a defendant has entered and completed a pretrial intervention program, `[t]he state attorney shall make the final determination as to whether the prosecution shall continue'"); State v. Winton, 522 So.2d 463 (Fla. 3d DCA 1988) (reversing a circuit court order denying the State's petition for writ of prohibition or mandamus seeking to prevent the appellee, a judge of the county court, from acting in excess of his jurisdiction by placing a criminal defendant in a pretrial intervention program without the consent of the State). Consistent with this tenet, under the Act, the prosecutor's decision to rely upon an enumerated exception in deciding not to seek a "prisoner releasee reoffender" sentence is not made expressly subject to judicial review.
Of course, a defendant may still mount an equal protection challenge where prosecutorial discretion is alleged to have been deliberately exercised pursuant to an "unjustifiable standard." Cf. Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)(observing that, "[w]ithin the limits set by the legislature's constitutionally valid definition of chargeable offenses, `the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as `the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification'") (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). However, a statute will not be invalidated on its face simply because the prosecutor has broad discretion, not otherwise subject to judicial review, to invoke or not invoke the penalties available pursuant to the statutory sentencing scheme. Cf. Young v. State, 699 So.2d 624, 627 & n. 3 (Fla.1997) (holding that only the state attorney may initiate habitual offender proceedings against an eligible defendant, and quashing district court's decision to the contrary) (disapproving Kirk v. State, 663 So.2d 1373, 1375 (Fla. 5th DCA 1995), in which the Fifth District concluded that judges "have authority to initiate proceedings to invoke the habitual offender statute," *352 because, despite amendment to the statute to provide that the prosecutor must adopt uniform guidelines for invoking it, which would "prevent selective use of the statute," the statute still "contains no provision for judicial review of the guidelines and ... specifically states that `a deviation from the adopted criteria is not subject to appellate review'").
We cannot accept the dissenting view here, which is based upon a New Jersey decision, because Florida's jurisprudence is different. The Florida view has not been adopted by the New Jersey Supreme Court, which construes its state constitution as providing for something other than a strict separation of powers doctrine. Apparently eschewing this important difference, the dissent, citing State v. Lagares, 127 N.J. 20, 601 A.2d 698, 702 (1992), asserts that, "unlike the Supreme Court of New Jersey, we have abandoned the notion that discretionary sentencing options cannot be made by the executive branch." See dissenting op. at 359. In Lagares, as here, the New Jersey Supreme Court recognized that claims of abuse in the exercise of prosecutorial discretion are subject to review. Compare supra at 351 ("[A] defendant may still mount an equal protection challenge where prosecutorial discretion is alleged to have been deliberately exercised pursuant to an `unjustifiable standard.'") with Lagares, 601 A.2d at 702 ("Where the Legislature has permitted the executive to select defendants for enhanced punishment or favorable treatment, this Court has generally required that decision-making be carried out in a fashion that limits potential arbitrariness [and has] required that the judiciary retain the power to review prosecutorial decisions to avoid abuses of discretion.").[8] However, that court's *353 perspective regarding the scope of such review differs significantly from ours. Contrary to this Court's precedent, the New Jersey Supreme Court, in interpreting its state constitution, has consistently required judicial oversight of the exercise of prosecutorial discretion. Compare Cleveland, 417 So.2d at 653 (Fla.1982) (holding that "the pretrial diversion decision of the state attorney is prosecutorial in nature and, thus, is not subject to judicial review") with State v. Leonardis, 73 N.J. 360, 375 A.2d 607, 618-19 (1977) (opining that the decision to divert a defendant into a pretrial diversion program is functionally a quasi-judicial decision, and providing for a judicial hearing to review a prosecutor's decision not to allow a defendant into such a program, to allow the defendant "to demonstrate that the prosecutor ... acted in a grossly arbitrary or capricious manner in denying admission and that his conduct amounted to a patent abuse of discretion," and stating the court's intent "to continue our supervisory role over the operation of this program and the legal determinations of reviewing courts and local officials"). This policy derives from New Jersey precedent "long recogniz[ing] that inflexible classification of the branches' duties and powers is neither possible nor desirable." Lagares, 601 A.2d at 701. As explained in Lagares:
A "strict interpretation of the principle, rigidly classifying all governmental action as legislative, executive, or judicial was never intended by * * * the drafters of our State Constitution. Consequently, the doctrine calls for a "`dispersal of decisional responsibility in the exercise of each power, as distinguished from a separation of powers * * *.'" State v. Leonardis, 73 N.J. 360, 371, 375 A.2d 607 (1977) (Leonardis II) (quoting John J. Gibbons, The Interdependence of Legitimacy: An Introduction to the Meaning of Separation of Powers, 5 Seton Hall L.Rev. 435, 436 (1974)).
With that flexibility in mind, we have concluded that the separation of powers "certainly never did create[] utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judicial branches has never been watertight."
Id. at 701 (citations omitted)(emphasis supplied).[9] This Court, on the other hand, in construing the Florida Constitution, has traditionally applied a strict separation of powers doctrine. Cf. Avatar Dev. Corp. v. State, 723 So.2d 199, 201(Fla.1998)(recognizing, in the context of a nondelegation analysis, that "[a]rticle II, section 3 declares a strict separation of the three branches of government and that: "No person belonging to one branch shall exercise any powers appertaining to either of the other two branches"(emphasis supplied)). In applying a strict separation of powers doctrine (as the Florida Constitution requires), rather than a doctrine effecting the "dispersal of decisional responsibility in the exercise of each power" (as the New Jersey constitution apparently requires), this Court is compelled to reach a *354 different result. If we were to apply the New Jersey "dispersal of decisional responsibility" concept here, we would be deviating from well-established principles of Florida law, which would have impact far beyond matters relating to prosecutorial decisions.
Lastly, even when the Act is properly viewed as a mandatory minimum statute, its effect is to establish a sentencing "floor." If a defendant is eligible for a harsher sentence "pursuant to [the habitual offender statute] or any other provision of law," the court may, in its discretion, impose the harsher sentence. See § 775.082(8)(c), Fla. Stat. (1997).[10] Because the "exception discretion" provision is otherwise subsumed by the State's broad, underlying prosecutorial discretion, we hold that the Act, which establishes a mandatory minimum sentencing scheme, is not unconstitutional on its face as violative of separation of powers principles.[11]

CRUEL OR UNUSUAL PUNISHMENT
In addition to raising a separation of powers argument, Cotton challenges the Act on three additional constitutional bases.[12] Cotton argues first that the Act violates the prohibition against cruel or unusual punishment by providing for disproportionate sentences. Specifically, he argues that the mandatory sentences imposed upon qualifying defendants under the Act are disproportionate because they are based upon the sole criteria that the defendant is classified as a prison releasee reoffender, without regard to any of the other factors surrounding a defendant's prior incarceration (such as the nature of his prior offenses).
As recognized by the Second District in Gibson v. State, 721 So.2d 363 (Fla. 2d DCA 1998), a proportionality analysis should be guided by objective criteria:

*355 Even though the precise contours of the proportionality analysis are unclear, the United States Supreme Court has specifically stated that a proportionality analysis should be guided by objective criteria, including: (i) the gravity of the offense and the harshness of the penalty, (ii) the sentences imposed on other criminals in the same jurisdiction, and (iii) the sentences imposed for commission of the same crime in other jurisdictions. See Solem, 463 U.S. at 292, 103 S.Ct. 3001, 77 L.Ed.2d 637. Justice Kennedy suggests that precedent establishes several common Eighth Amendment principles that effectively require the courts to give broad deference to the substantive penological policies announced by the state legislature without undue comparison to the policy decisions of other states. See Harmelin, 501 U.S. at 998-99, 111 S.Ct. 2680, 115 L.Ed.2d 836.
Id. at 368 (footnote omitted). Although "undue comparison" with the policy decisions of other jurisdictions is not required, we note that both the State of Washington and the federal government have enacted mandatory "three-strikes" legislation which has been consistently upheld. See United States v. Kaluna, 192 F.3d 1188, 1191 (9th Cir.1999)(rejecting several constitutional challenges to the federal "three-strikes law," 18 U.S.C. § 3559(c)), cert. denied, ___ U.S. ___, 120 S.Ct. 1561, 146 L.Ed.2d 465 (2000); United States v. Gatewood, 184 F.3d 550 (6th Cir.1999) (severing federal three-strikes statute's requirement that a defendant disprove the violent nature of previous robberies by the heightened standard of "clear and convincing evidence," and upholding statute as thus modified); United States v. Rasco, 123 F.3d 222 (5th Cir.1997)(holding that the federal three strikes law does not violate the separation of powers doctrine); United States v. Washington, 109 F.3d 335, 338 (7th Cir.1997) (holding that the federal three-strikes law satisfies all constitutional requirements); United States v. Farmer, 73 F.3d 836 (8th Cir.)(holding that the federal three-strikes law is constitutional and that the court does not have any discretion in the imposition of a life term); State v. Manussier, 129 Wash.2d 652, 921 P.2d 473 (1996)(holding that Initiative 593, the state "three strikes law," is constitutional).
The "substantive penological policies announced" by the Florida Legislature in enacting this statute are legitimately furthered by the structure of the Act. In passing the Act, the Legislature found that (1) recent court decisions have mandated the early release of violent felony offenders; (2) the people of the State and its visitors deserve public safety and protection from violent felony offenders who have previously been sentenced to prison and who continue to prey on society by reoffending; and (3) "the best deterrent to prevent prison releasees from committing future crimes is to require that any releasee who commits new serious felonies must be sentenced to the maximum term of incarceration allowed by law, and must serve 100 percent of the court-imposed sentence."
Although the felonies enumerated in the Act are not entirely coextensive with those set forth in the habitual felony offender statute, section 775.084, Florida Statutes (1997), there is considerable overlap. The additional felonies included in the Act treason, carjacking, home-invasion robbery, aircraft piracy, burglary of an occupied structure or dwelling, committing criminal offenses with a weapon, committing criminal offenses involving the use or threat of physical force or violence against another, engaging in lewd sexual assaults upon children, abusing or neglecting children, and engaging in activities involving sexual performance by a childare all crimes which have significant potential to compromise the victim's personal safety. It is apparent, reading the "Whereas" clauses accompanying the Act, that this is the type of "predatory" behavior which the legislators were endeavoring to curtail.
*356 The criteria included in the Act encompass those recidivists who have shown either a repeated or an escalating pattern of criminal behavior, reflecting resistance to prison's prospectively deterrent effect. While the Act's classification scheme does not differentiate based upon the character of the releasee's prior crimes, it does focus on the character (and severity) of the latest criminal conduct, together with the fact that recent imprisonment did not dissuade the defendant from engaging in the qualifying offense. Thus, for this particular set of "violent felony offenders" (meaning, in this context, those offenders who commit any of the Act's enumerated felonies), the legislative goal of preventing the commission of additional serious crimes is accomplished by providing enhanced incapacitation, through longer prison terms. Seen in this light, the Act's mandatory sentencing scheme does not constitute "cruel or unusual" punishment. See generally Parke v. Raley, 506 U.S. 20, 27, 113 S.Ct. 517, 121 L.Ed.2d 391 (observing that the "States have a valid interest in deterring and segregating habitual criminals," and that the United States Supreme Court has "repeatedly upheld recidivism statutes `against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities' ") (citing Rummel v. Estelle, 445 U.S. 263, 284, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980))(quoting Spencer v. Texas, 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)). But cf. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that imposition of life sentence without parole under recidivism statute violated Eighth Amendment when current conviction was for passing a bad check and prior offenses were similarly minor).

OVERBREADTH
Next, Cotton argues that the Act is overbroad, because it makes no distinction between persons who have been released from prison after serving their full sentences and those who were released because their convictions were overturned. He reasons that the Act thus can potentially provide enhanced punishment on the basis of innocent conduct.
A statute is overbroad "if in its reach it prohibits constitutionally protected conduct." State v. T.B.D., 656 So.2d 479, 481 (Fla.1995) (quoting Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). As this Court has recognized, the overbreadth doctrine "has been employed by the [United States Supreme] Court sparingly and only as a last resort." Id. (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). In T.B.D., we further quoted Broadrick, 413 U.S. at 615, 93 S.Ct. 2908, in explaining the proper application of the doctrine:
[T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conducteven if expressivefalls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.... To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.
T.B.D., 656 So.2d at 481-82.
Respondent's argument does not meet this substantial burden. Here, the interpretation provided by the Statethat the term "reoffender" must be read in context, so that it refers to one who commits a crime in addition to the one (which must not have been overturned) for which he was recently imprisonedis a logical *357 one. Pursuant to this construction, a person who commits a qualifying offense within three years of release from prison based upon invalidation of the underlying conviction would not be a "reoffender" within the meaning of the Act. As thus reasonably interpreted, the Act's envisioned "overbreadth" is neither real nor substantial.

SUBSTANTIVE DUE PROCESS
Lastly, Cotton argues that the Act contains a "victim veto," which enables the victim, without any identifiable standard, to determine whether a qualified defendant will be sentenced pursuant to the Act. This concern over the perceived "victim veto" was shared by the Fifth District (in dicta) in Speed v. State, 732 So.2d 17, 19 n. 4 (Fla. 5th DCA 1999). There, the district court questioned whether this aspect of the Act might invalidate it, based upon a violation of substantive due process:
We do have one profound reservation in regard to the Act, but it is not based on separation of powers but rather on substantive due process. Our concern is prompted by the provision in subsection (8)(d)1.c. of the Act which apparently gives the victim of the crime an absolute veto over imposition of the mandatory prison sentences prescribed by the Act, in this case a fifteen year sentence. Thus, the punishment of the offender will vary from case to case based upon the benign nature, or susceptibility to intimidation, of the criminal's victim. Should an armed robber be punished less severely because his victim happens to be forgiving rather than somewhat vindictive? Moreover, this provision of the Act promotes harassment and intimidation of the victim. Apparently this due process argument in regard to a victim veto has not been raised in any other case involving the validity of the Prison Releasee Reoffender Act, nor has it been briefed or argued in the instant appeal. We therefore do not determine its viability here.
Viewing this factor as an "absolute veto" is consistent with the argument that the exceptions contain a limitation on the State's charging discretion (that is, that they define when the State attorney may not invoke the Act). However, this interpretation is not consistent with the Act's legislative history, which reflects that the exceptions were included "to prohibit plea bargaining in prison releasee reoffender cases, unless: there is insufficient evidence; a material witness's testimony cannot be obtained; the victim provides a written objection to such sentencing; or there are other extenuating circumstances precluding prosecution." Fla. S. Comm. on Crim. Just., CS for SB 2362 (1997) Staff Analysis 7 (Apr. 10, 1997) (emphasis supplied).
Thus, rather than circumscribing the State's ability to invoke the Act, the exceptions provision appears to intend the opposite effectthat the State be held accountable for its prosecuting policies under the statute. This interpretation is consistent with section 775.082(8)(d)2, which requires the state attorney to explain, in writing, the sentencing deviation in every case "in which the offender meets the criteria in paragraph (a) and does not receive the mandatory minimum prison sentence." Pursuant to the Act, these deviation memoranda must to be kept by the Florida Prosecuting Attorneys Association, Inc., be maintained for at least ten years, and be made available to the public upon request.
When the exceptions provision is viewed in this light, the victim's input is seen not as a "veto," but as a circumstance which may justify the State's exercise of discretion not to invoke the Act. Against the backdrop of this interpretation, Cotton's additional substantive due process claim that the Act violates due process because it impermissibly allows the state attorney unlimited discretion to define the terms contained in the exceptions provisionis similarly without merit.
Cotton argues that "[t]his omission grants the prosecutor the ability to selectively *358 define the terms in individual cases, and to apply or not apply them to a particular defendant." His argument (bottomed on the assumption that the exceptions provision precludes application of the Act under the enumerated circumstances) appears to be that the prosecutorby construction of the operative terms contained in the exceptions provisioncould arbitrarily and capriciously manipulate application of the Act, contrary to Legislative intent.
However, as stated earlier, the exceptions do not restrict the State's ability to prosecute under the Act. Rather, they appear to signal the Legislature's opposite intent that, in qualifying cases, unless "extenuating circumstances exist which preclude the just prosecution of the offender," § 775.082(8)(d)1.d., Fla. Stat. (1997), the Act should be applied. See § 775.082(8)(d)1 (reflecting the Legislature's intent that "offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless any of the following circumstances exist")(emphasis added). In the event of perceived arbitrary or capricious application of the Act, as stated earlier, a defendant can always challenge the statute (as applied) on equal protection grounds. But cf. Bell v. State, 369 So.2d 932, 934 (Fla.1979)(observing that "[t]he mere failure to prosecute all offenders is no ground for a claim of denial of equal protection").
Based upon the foregoing, we answer the certified question in the negative, and approve the First District's decision in Woods. We quash the Second District's decision in Cotton and remand to that court for further proceedings consistent with this opinion. We also disapprove the opinions in Coleman, Wise, and Speed (interpreting, in dicta, former provision regarding victim's preference as "victim veto") to the extent that they are inconsistent with this decision.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD and PARIENTE, JJ., concur.
QUINCE, J., dissents with an opinion.
QUINCE, J., dissenting.
The majority has found no separation of powers problem with the Prison Releasee Reoffender Act (the Act). I respectfully disagree because the Act gives all sentencing discretion to the State Attorney, the executive branch, and as such violates the separation of powers doctrine embodied in article II, section 3 of the Florida Constitution.
As other observers have noted, the problem with this statute is not that there is a mandatory sentence involved. We have long held that the Legislature has the authority to enact mandatory sentences. See O'Donnell v. State, 326 So.2d 4 (Fla. 1975); Owens v. State, 316 So.2d 537 (Fla. 1975). But, as Judge Sharp pointed out in her dissent in Lookadoo v. State, 737 So.2d 637 (Fla. 5th DCA 1999) (Sharp, J., dissenting), and as the defendants argue here, the minimal sentencing discretion inherent in this statute is placed in the hands of the state attorneys and the victims. The courts have been totally excluded from exercising their traditional role as sentencers.
Traditionally, the three branches of government have each played a role in the fair and effective administration of our criminal laws. The Legislature defines crimes and establishes the appropriate range of punishment, including minimum mandatory laws. The executive branch, through the various state attorneys, determines who to prosecute and by so doing also determines, in part, the extent of a defendant's sentencing exposure based on the charges brought. However, the ultimate discretionary sentencing decision has generally been exercised by the judiciary. See, e.g., State v. Benitez, 395 So.2d 514 (Fla.1981)(rejecting separation of powers *359 challenge because the trial court retained sentencing discretion).
As the Supreme Court of New Jersey observed in State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992):
Although sentencing discretion is shared to some extent among the three branches of government, the determination of the sentence is committed to the discretion of the judiciary. See State v. Warren, 115 N.J. 433, 447, 558 A.2d 1312 (1989). Even when the State and a defendant have entered into a plea agreement, a court in discharging its sentencing duties may not simply accept the arrangement without reviewing its factual support and the circumstances surrounding its formation. See State v. Sainz, 107 N.J. 283, 292-92, 526 A.2d 1015 (1987).
. . . .
Where the Legislature has permitted the executive to select defendants for enhanced punishment or favorable treatment, this Court has generally required that decision-making be carried out in a fashion that limits potential arbitrariness. In addition, we have required that the judiciary retain the power to review prosecutorial decisions to avoid abuses of discretion. We continue that approach today.
601 A.2d at 702. Accord People v. Superior Court (Romero), 13 Cal.4th 497, 53 Cal. Rptr.2d 789, 917 P.2d 628 (1996). However, unlike the Supreme Court of New Jersey, we have abandoned the notion that discretionary sentencing decisions cannot be made by the executive branch.
The decision on who to charge and what charges should be brought resides with the executive branch. See State v. Bloom, 497 So.2d 2 (Fla.1986). The ultimate determination of the sentence, when discretion in sentencing can be exercised, cannot also rest with that branch of government. Since this Act gives the discretion in sentencing to the executive branch, I dissent from the majority's conclusion that section 775.082(8), Florida Statutes, does not violate the separation of powers doctrine.
NOTES
[1] We have consolidated the two review proceedings from these separate appeals for disposition by one opinion.
[2] Chapter 98-204, section 10, Laws of Florida, amended this section, renumbering section 775.082(8)(a)1. as section 775.082(9)(a)1; however, the language of the subsection remained the same until July 1, 1999. See Ch. 99-188, § 2, at 735-36, Laws of Fla. Effective July 1, 1999, the statute was amended further by the "Three-Strike Violent Felony Offender Act." See Ch. 99-188, § 1, at 735, Laws of Fla.
[3] Subsequent to Cotton, the Second District certified that its interpretation of the Act conflicted with both Woods and the Third District's decision in McKnight v. State, 727 So.2d 314 (Fla. 3d DCA 1999)(holding that the sentencing provisions of the Act are mandatory). See Coleman v. State, 739 So.2d 626 (Fla. 2d DCA 1999). The Fourth District later agreed with Cotton, and also certified conflict with McKnight. See State v. Wise, 744 So.2d 1035 (Fla. 4th DCA 1999)(holding that, pursuant to section 775.082(8)(d)1, the trial court has the responsibility to make findings of fact and exercise its discretion in determining the application of an enumerated exception to the mandatory sentence), review granted, 741 So.2d 1137 (1999). But cf. Rollinson v. State, 743 So.2d 585, 590 (Fla. 4th DCA 1999)(Gross, J., concurring specially)(observing that a "recent amendment to the statute nullifies our reading of the statute in State v. Wise")(citing Ch. 99-188, Laws of Fla. (1998 Supp.)).
[4] The same question has been certified in other cases. See, e.g., Gonzales v. State, 762 So.2d 920 (Fla. 3d DCA 1999); Richardson v. State, 748 So.2d 1042 (Fla. 5th DCA 1999); Simmons v. State, 755 So.2d 682 (Fla. 4th DCA 1999).
[5] As observed by the First District in the Woods opinion:

Because we conclude that the language of the Act is clear and unambiguous, we find it unnecessary to rely on legislative history. However, the legislative history of the Act does appear to be consistent with our construction. The House of Representatives Bill Research and Economic Impact Statement for CS/CS/HB 1371 (which was eventually enacted as Chapter 97-239) states (at page 5) that, "[u]pon the court finding, by a preponderance of the evidence, that the proper showing has been made, the court must impose the prescribed sentence." The Senate Staff Analysis and Economic Impact Statement for CS/SB 2362 (which was almost identical to the House version) is even more explicit. It states (at page 6) that the "provisions require the court to impose the mandatory minimum term if the state attorney pursues sentencing under the[] provisions and meets the burden of proof for establishing that the defendant is a prison releasee reoffender" (emphasis in original); and (at page 10) that the bill would "give[] the state attorney the total discretion to pursue prison releasee reoffender sentencing. If the court finds by a preponderance of the evidence that the defendant qualifies, it has no discretion and must impose the statutory maximum allowable for the offense." As the House and the Senate Reports both recognized, the effect of the proposal would be to impose a mandatory minimum sentencing requirement in all cases where the prosecutor was able to establish that the defendant qualified as a prison releasee reoffender.
740 So.2d at 23.
[6] Although we address the constitutionality of the entire Act here, only those portions of the Act which apply to Cotton and Woodsboth of whom were convicted of robbery in the cases on appealare set forth in full.
[7] As amended, section 775.08401, Florida Statutes (1997) provides:

Habitual offenders and habitual violent felony offenders; violent career criminals; eligibility criteria.
(1) The state attorney in each judicial circuit shall adopt uniform criteria to be used when deciding to pursue:
(a) Habitual felony offender or habitual violent felony offender sanctions; or
(b) With respect to an offense committed on or after October 1, 1995, violent career criminal sanctions.
The criteria for each circuit shall be kept on file by the Florida Prosecuting Attorneys Association, Inc.
(2) The criteria shall be designed to ensure fair and impartial application of s. 775.084.
(3)(a) A deviation from this criteria must be explained in writing, signed by the state attorney, and placed in the case file maintained by the state attorney.
(b) On a quarterly basis, each state attorney shall submit copies of deviation memoranda regarding offenses committed on or after October 1, 1995, to the president of the Florida Prosecuting Attorneys Association, Inc. The association must maintain such information for at least a 10-year period.
(4) A deviation from the adopted criteria is not subject to appellate review.
§ 775.08401, Fla. Stat. (1997).
[8] The dissent also cites People v. Superior Court, 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628, 637 (1996), a case cited not only in Lagares, but also in the dissenting opinions of Lookadoo v. State, 737 So.2d 637, 639 (Fla. 5th DCA 1999)(stating that "[m]ore recently enacted "three-strikes" laws in California have been held constitutional only if interpreted to allow the court to strike or dismiss allegations of prior convictions on its own motion") and Gray v. State, 742 So.2d 805 (Fla. 5th DCA 1999)(same). However, because that decision dealt with the retained discretion of the trial court to dismiss sentencing allegations (under an established provision of California's penal code), rather than with the trial court's oversight of the prosecutor's charging discretion (as is involved here), the case is inapposite. As pointed out by Justice Chin in his concurring opinion, the majority in Superior Court determined that "because the `three strikes' statute does not contain `a clear legislative direction to the contrary,' the trial court retains discretion under [the separate provision of] Penal Code section 1385 to dismiss prior felony conviction allegations." 53 Cal.Rptr.2d 789, 917 P.2d at 649-50 (emphasis supplied) (citation omitted). Thus, in the first paragraph of its opinion, the majority had indicated that "[a]lthough the Legislature may withdraw the statutory power to dismiss in furtherance of justice, we conclude it has not done so in the Three Strikes law." Id. at 630. Indeed, it observed that the "Three Strikes" law did not "purport to require the court to oversee the prosecutor's charging decisions [which] the court, in reality, [does not] exercise any power over," because "[a]ny decision to dismiss [sentencing allegations] is necessarily made after the prosecutor has invoked the court's jurisdiction by filing criminal charges." Id. at 637 (emphasis supplied). Thus, under California law:

[E]ven if the Legislature could constitutionally remove the power to strike priors from the courts, it has not done so, but rather has purported to vest in the prosecutor the power to foreclose the exercise of an admittedly judicial power by an appropriate judicial officer. It is no answer to suggest that this is but a lesser included portion of the prosecutor's discretion to forego prosecution, as the decision to forego prosecution does not itself deprive persons of liberty.
Id. at 635. Pertinent to our analysis, in the words of Justice Chin, the majority in Superior Court recognized that "a statute giving the prosecution unlimited charging discretion at the outset and giving the court no power to dismiss charged priors for which there was sufficient evidence would pass constitutional muster." Id. at 650 (Chin, concurring)(emphasis supplied). Cf. State v. Dugan, 685 So.2d 1210, 1212 (Fla.1996)(holding that section 397.705, Florida Statutes, which allows a court with jurisdiction over a substance-abuse impaired offender who is either charged with or convicted of a crime to refer the offender to receive drug counseling "instead of or in addition to final adjudication, imposition of a penalty or sentence, or other action," gives the trial court the discretion to dismiss the charges against an offender who successfully completes a drug treatment program," and approving the appellate court opinion distinguishing State v. Turner, 636 So.2d 815 (Fla. 3d DCA 1994), "which held that the sole authority to determine whether to prosecute a case was with the prosecutor because unlike Turner, in this case there is a statute authorizing the court to dismiss the charges").
[9] A year after the decision in Leonardis, the New Jersey Legislature adopted the New Jersey Code of Criminal Justice, which established a program for supervisory treatment which was substantially the same as the pretrial diversion program reviewed in Leonardis, but which provided for judicial review of prosecutorial decisions refusing to consent to enrollment of criminal defendants in a pretrial diversion program. See State v. Dalglish, 86 N.J. 503, 432 A.2d 74, 78 (1981) ("Since the Legislature has established a PTI program with judicial review ... the problem of judicial interference with legislative authority has been eliminated. Nevertheless, our concern about unwarranted interference with prosecutorial prerogative persists....").
[10] This provision is currently codified as section 775.082(9)(c), Florida Statutes (1999).
[11] This Court's decision in State v. Benitez, 395 So.2d 514 (Fla.1981), cited in the dissenting opinion at 359, is not inconsistent with this conclusion. In Benitez, the Court addressed a separation of powers challenge to a drug trafficking statute (section 893.135, Florida Statutes) which established severe mandatory minimum sentences for trafficking in various types of illegal drugs, prevented the trial court from suspending, deferring or withholding the adjudication of guilt or the imposition of sentence on a person convicted under the law, and eliminated the defendant's eligibility for parole during the minimum mandatory sentence. Subsection (3) of the statute provided what this Court described as "an `escape valve' from the statute's rigors, based on the initiative of the prosecuting attorney, by permitting the court to reduce or suspend a sentence if a convicted defendant is willing to cooperate with law enforcement authorities in the detection or apprehension of others involved in drug trafficking." 395 So.2d at 517.

The appellees in Benitez challenged the statute, alleging that subsection (3) "usurps the sentencing function from the judiciary and assigns it to the executive branch, since the benefits of subsection (3) are triggered by the initiative of the state attorney." Id. at 519. In rejecting this argument, the Court noted that, under the statute, the ultimate decision regarding sentencing resided with the judge, who must rule on the motion for reduction or suspension of sentence, citing People v. Eason, 40 N.Y.2d 297, 386 N.Y.S.2d 673, 353 N.E.2d 587, 589 (1976) (upholding a similar statute against a separation of powers challenge, observing that the statute before it served "only to limit the sentencing options available to the judiciary as do, of course, all statutes prescribing the limits of the penal sanction to be imposed for any given offense") (emphasis supplied). Here, similarly, the Act provides a potential range of sentencing options applicable to qualifying offenses, and the ultimate discretion regarding sentencing within that range rests with the trial judge. Thus, no separation of powers violation occurs.
[12] Because the trial courtwhose interpretation of the Act was affirmed by the Second Districtdid not interpret the Act as a mandatory minimum statute, Cotton, who was not sentenced as a prisoner releasee reoffender, did not raise these three constitutional challenges to the Act below. These additional issues have, nonetheless, been addressed here. Cf. Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999)(observing that "an appellee need not raise and preserve alternative grounds for the lower court's judgment in order to assert them in defense when the appellant attacks the judgment on appeal").