765 So.2d 299 (2000)
Donald WARD, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1977.
District Court of Appeal of Florida, Fifth District.
August 25, 2000.
*300 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, J.
Ward appeals from his judgments and sentences in case number 98-134 for attempted first degree murder of a law enforcement officer with a firearm,[1] robbery with a firearm,[2] aggravated assault with a firearm,[3] and felony causing bodily injury.[4] He also appeals from his sentences imposed in case number 92-3339, after revocation of his probation for two counts of *301 robbery with a firearm[5] and aggravated battery.[6]
Ward first argues he should not have been convicted of both attempted first degree murder of a law enforcement officer with a firearm and felony causing bodily injury, because both crimes grew out of the same act; i.e., shooting Deputy Baldree during a robbery. Ward claims the dual convictions violate his double jeopardy protection.[7]
This court rejected that argument in Gordon v. State, 744 So.2d 1112 (Fla. 5th DCA 1999), rev. granted, Case No. 96,834, 761 So.2d 329 (Fla. Feb. 10, 2000), where we held that attempted first degree murder, felony causing bodily injury, and aggravated battery causing great bodily harm are separate offenses, and are not degrees of the same offense so as to preclude multiple convictions arising from the same criminal transaction. See also Brown v. State, 761 So.2d 1135 (Fla. 1st DCA 2000). However, as we did in Gordon, we certify to the Florida Supreme Court the question of whether Ward's dual convictions violate his double jeopardy rights.
Ward also argues that the prosecutor in his case committed error during his rebuttal closing argument by making inappropriate comments on the defense, and by implying that Ward had some burden of proof in this case. However, the defense failed to make any objections, and thus unless fundamental error occurred, this issue has not been preserved for appellate review. Delgado v. State, 2000 WL 1205960, ___ So.2d ___ (Fla. Aug. 24, 2000). In this case, most of the prosecutor's comments were "fair comment" on the defense counsel's closing argument. They did not rise to the level of fundamental error. See Delgado v. State, 2000 WL 1205960, ___ So.2d ___ (Fla. Aug. 24, 2000); Thomas v. State, 748 So.2d 970 (Fla.1999); McDonald v. State, 743 So.2d 501 (Fla.1999); State v. Fritz, 652 So.2d 1243 (Fla. 5th DCA 1995).[8]
Ward also argues the trial judge erred in imposing upward departure sentences of life in prison on the two counts of armed robbery and fifteen years imprisonment on the aggravated battery with a firearm, in case number 92-3339 (the violation of probation case), without written reasons for departure. The failure to file written reasons for an upward departure sentence is a fundamental sentencing error which can be raised on appeal. Collins v. State, 766 So.2d 1009 (Fla.2000); Thogode v. State, 763 So.2d 281 (Fla.2000); Maddox v. State, 760 So.2d 89 (Fla.2000). Since there are no written reasons for the upward departure, we reverse and remand for sentencing within the guidelines. Pope v. State, 561 So.2d 554 (Fla.1990).
Finally, Ward argues the trial court erred in sentencing him as both an habitual violent felony offender and as a prison releasee reoffender on count one (attempted murder of a law enforcement officer with a firearm), and count two (armed robbery), in case number 98-134. We have held that the imposition of an habitual offender sentence and a prison releasee reoffender sentence for the same crime violates double jeopardy. Lewis v. State, 751 So.2d 106 (Fla. 5th DCA 1999); Thomas v. State, 745 So.2d 1119 (Fla. 5th DCA 1999). The fourth district agrees. See McFadden v. State, 2000 WL 121793, ___ So.2d ___ (Fla. 4th DCA Feb.2, 2000); Adams v. State, 750 So.2d 659 (Fla. 4th DCA 1999); Melton v. State, 746 So.2d 1188 (Fla. 4th DCA 1999); Glave v. State, *302 745 So.2d 1065 (Fla. 4th DCA 1999). But see Smith v. State, 754 So.2d 100 (Fla. 1st DCA 2000); Newsome v. State, 2000 WL 256153, ___ So.2d ___ (Fla. 2d DCA Mar.8, 2000); McDaniel v. State, 751 So.2d 182 (Fla. 2d DCA 2000); Jones v. State, 751 So.2d 139 (Fla. 2d DCA), rev. granted, Case No. 00-282, 99-712, 760 So.2d 947 (Fla. March 4, 2000); Grant v. State, 745 So.2d 519 (Fla. 2d DCA 1999) ,rev. granted, Case No. 99-164, 761 So.2d 329 (Fla. April 12, 2000). There is a conflict which the first and second districts have certified to the Florida Supreme Court. See Smith; Newsome; Jones.
The courts have held that the longer or harsher of the two sentences should stand and the lesser one vacated. Lewis; Glave. In this case, Ward was sentenced to life on both counts as an habitual violent felony offender, and as a prison releasee reoffender. The Prison Releasee Reoffender Act[9] does not allow for any form of early release. § 775.082(8)(b), Fla. Stat. (1997). Thus it is the harsher sentence, and the habitual offender sentences must be vacated on these two counts.
In summary, we certify the following question:
WHETHER DOUBLE JEOPARDY PRECLUDES WARDS' CONVICTIONS AND SENTENCES ON CHARGES OF ATTEMPTED FIRST DEGREE MURDER OF A LAW ENFORCEMENT OFFICER WITH A FIREARM AND FELONY CAUSING BODILY INJURY ARISING OUT OF THE SAME CRIMINAL ACT?
We vacate Ward's habitual violent felony offender sentences for attempted first degree murder of a law enforcement officer with a firearm and armed robbery in case number 98-134, leaving intact his sentences as a Prison Releasee Reoffender on those counts. We reverse the departure sentence in case number 92-3339 and remand for resentencing. The judgments and sentences are affirmed in all other regards.
AFFIRMED in part; Habitual Offender Sentences in case number 98-134 VACATED; Sentences in case number 92-3339 REVERSED and REMANDED for resentencing. QUESTION CERTIFIED.
COBB, J., concurs.
HARRIS, J., concurs specially with opinion.
HARRIS, J., concurring specially:
The only issue which concerns me is the allegation of improper prosecutorial comments. We are once again urged by the State not to consider such comments because they were not objected to below. I submit this position is incomplete; the State should urge that the error was not preserved and did not deny the defendant a fair trial. The State argues, quite correctly, that the law is that such unobjected to errors may not be raised on appeal unless they amount to fundamental error. But this leaves two questions: what precisely is fundamental error and can the court grant relief from harmful error when it was not raised below and is not raised on appeal?
I know the supreme court's definition of fundamental error; it's the practical application that gives me headaches. I yearn for an understandable standard.
We would all agree that the purpose of a trial under our system of justice is to permit the State the opportunity, in a fair proceeding, to prove beyond a reasonable doubt the accused's guilt. And we would agree that the accused is entitled to "a fair trial, not a perfect trial." Lackos v. State, 339 So.2d 217, 219 (Fla.1976). We would also agree that this means that the court will not be concerned with errors that could not have affected the jury verdict. Indeed, this is the test of the harmless *303 error rule. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Where we might disagree is how to apply the fundamental error rule to specific errors and whether or not the court, on its own, may grant relief from errors not raised on appeal which it determines unfairly affected the outcome of the trial.
The supreme court's recent decision in Goodwin v. State, 751 So.2d 537 (Fla.1999), has gone a long way in answering such concerns. Goodwin makes it clear that the appellate court is obliged to ensure that criminal trials are free of harmful error in order to assure that the defendant receives his constitutionally required fair trial. But some questions remain.
Since the polestar of a fair trial is the absence of harmful error, does the fact that no objection was made by defense counsel waive the accused's right to a fair trial? The policy reasons for requiring objections are clear: if a proper objection is made, the court may yet be able to salvage the trial by correcting the problem and still provide a fair trial. But does this policy reason, which itself acknowledges an unfair trial if the problem is not corrected, justify imposing an unfair trial on defendant because his attorney did not object?
"No," responds the law, "if the prosecutor's comments amounted to fundamental error."
"This assumes," I respond seeking guidance, "that some inappropriate comments might constitute fundamental error and some might not. How do I tell the difference?"
"It is fundamental error," advises the law, "if it reaches down into the validity of the trial to the extent that a guilty verdict could not have been obtained without the assistance of the alleged error."
"Then," I persist, "why don't we merely determine whether the prosecutor made an unobjected to error and, if so, subject it to a harmless error analysis? If the error is found harmful, that is, if the State has not been able to prove that it did not affect the jury verdict, is the error not ipso facto fundamental?"
"Well," replies the law somewhat hesitantly, "only when the defendant satisfies the burden of demonstrating the existence of preserved error does the appellate court engage in a DiGuilio harmless error analysis. If the error is not properly preserved or is unpreserved, the conviction can be reversed only if the error is `fundamental.'"
"But how can we tell if an unpreserved error is or is not fundamental, that is, whether it has denied defendant a fair trial or not, unless we first conduct a harmless error analysis?[1] Let me be direct. Can there be a harmful errorthat is, one that has adversely affected the outcome of the trialthat is not fundamental? If so, what are those errors?"
To this, I heard no response. Perhaps a few other judges are as deaf as I.
In Ruiz v. State, 743 So.2d 1 (Fla.1999), the court stated:
When the properly preserved comments are combined with additional acts of prosecutorial overreaching set forth below, we find that the integrity of the judicial process has been compromised and the resulting convictions and sentences irreparably tainted. (Emphasis added).
The emphasized portion of the above quote points out the importance of the harmless error analysis in considering whether unobjected to errors are fundamental. If it clearly appears from the record that the unobjected to prosecutorial misconduct or the unobjected to improper judicial ruling denied the defendant a fair trial, is not the conviction "irreparably tainted"? It appears that the answer to the question whether the alleged error is harmful, that is, whether the record reveals that "but for" the alleged error a conviction would (may?) not have occurred, *304 is decisive in determining whether an unobjected to error is fundamental. No harm, no (reversible) error. If the prosecutor's actions could not reasonably be held to have affected the jury's verdict, no reversal should follow. But if the court is convinced that the unobjected to error resulted in the conviction (or may have contributed to the guilty verdict?), then it appears that the court should proceed to a harmless error analysis.
The Supreme Court of Connecticut has adopted a rule specifically referencing a harmless error analysis. In State v. Golding, 213 Conn. 233, 567 A.2d 823, 827 (1989), the court held:
[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.
Steps (1), (2), and (3) set out the court's rule for determining constitutional (fundamental?) error. Certainly the alleged error must adequately appear in the record, the error must be established, and the error must be serious enough to have affected the outcome of the trial. If these conditions are met, do we not have fundamental error?[2] Step (4) shows the relationship between fundamental error and the harmless error rule. Even a fundamental error may be harmless depending on the circumstances of the case. If the evidence of guilt is so overwhelming that the court can say that the conviction undoubtedly would have occurred even without the error, then even though the error may have added to the State's case, it is irrelevant.
If the right to a fair trial is not specifically granted by the constitution, it is certainly within its penumbra. Florida recognizes the right to a fair trial as a due process right. See Goodwin. Since receiving a fair trial is surely of constitutional magnitude (apparently Connecticut's fundamental error equivalent), it appears that while there are constitutional violations which do not deprive defendant of a fair trial, there cannot be a violation which deprives defendant of a fair trial which is not a constitutional violation or, under terms of Florida law, of fundamental magnitude.
The federal courts have defined the rights of the court, on its own, to grant relief even if the error was not preserved. They hold that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the district court. This appears to be the right, indeed the obligation, of a court whose fundamental responsibility is to assure a fair trial. Although our supreme court did not address the issue specifically in relation to the appellate court's ability to raise the issue of fundamental error on its own, the Goodwin court did approve language quoted by Justice Breyer in O'Neal v. McAninch, 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995):
Whether or not counsel are helpful, it is still the responsibility of the ... court, once it concludes that there was error, to determine whether the error affected the judgment. It must do so without benefit of such aids as presumptions or *305 allocated burdens of proof that expedite the fact-finding at the trial.
Goodwin, 751 So.2d at 545.
The Goodwin court went on to state: "`Moreover, as Justice Stevens has observed, in the end, the way we phrase the governing standard is far less important than the quality of the judgment with which it is applied.'"
I concur because after a review of the entire record I conclude that the comments of the prosecutor, even if inappropriate, could not have affected the result of this case. Hence, I find no harmful error and, if different, no fundamental error.
NOTES
[1] §§ 782.04(1)(a)1; 777.04(1), 775.0823(2); 775.087(1)(a), (2)(a), Fla. Stat.
[2] § 812.13(2)(a), Fla. Stat.
[3] § 784.021(1)(a), Fla. Stat.
[4] § 782.051(1), Fla. Stat.
[5] § 812.13(2)(a), Fla. Stat.
[6] § 784.045(1)(a), Fla. Stat.
[7] U.S. Const. Amend. V; Art. I, § 9, Fla. Const.
[8] Ward also argues that the trial court should not have allowed the prosecutor to exhibit a firearm to the jury. The actual firearm used in the crimes was not recovered but the firearm exhibited by the state was similar to that weapon. We find no abuse of discretion. See § 90.402, Fla. Stat.
[9] The Florida Supreme Court recently held that the Prison Releasee Reoffender Act does not violate the separation of powers doctrine State v. Cotton, 2000 WL 766521, ___ So.2d ___ (Fla. June 15, 2000).
[1] Which came first, the chicken or the egg?
[2] I see the distinction between a preserved error and an unpreserved error as more form than substance. It appears that a preserved error is automatically invited to the party at which harmless error is considered while an invitation to unpreserved error awaits a court's determination that the error affected (may have affected?) the defendant's right to a fair trial.