791 So.2d 1221 (2001)
Daneal J. IRONS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-974.
District Court of Appeal of Florida, Fifth District.
August 17, 2001.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellant.
*1222 Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Irons appeals from his judgment and sentence for sexual battery.[1] He argues collateral crime evidence was improperly admitted to rebut his defense of consent to the sexual battery case, that it was error to allow the medical expert who examined the victim to opine that her injuries were consistent with forced sexual intercourse, and that he was improperly sentenced to 15.7 years in prison, followed by one year on probation with the first 15 years as a prison releasee reoffender, and the balance under the guidelines.[2] We affirm Irons' conviction but vacate his sentence for the reasons discussed below.
The evidence of the collateral crimes (sexual battery and attempted sexual battery of another witness) was admissible under the Williams rule.[3]Williams has been codified as section 90.404(2)(a), Florida Statutes and provides:
Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Similar fact evidence is admissible in sexual battery cases if the evidence has a logical relationship to some material aspect of the charged crime beyond the character of the defendant or his propensity to force himself on women. Williams v. State, 621 So.2d 413, 415 (Fla.1993). Such evidence may be relevant to the issue of consent. Williams, 621 So.2d at 416.
Although there are some differences between the two crimes, the actions by Irons in both are sufficiently similar to be relevant and admissible and to show a common modus operandi. The two assaults occurred within six weeks of each other. In both cases, the assaults took place at the Contemporary Resort Hotel where Irons worked. Thus he was familiar with the surroundings. In both cases, Irons was wearing his Disney uniform and/or name tag or identified himself as a Disney worker, thus giving him credibility. In both cases, Irons engaged in small talk with his victims in an attempt to put them at ease. In both cases, Irons attempted to isolate and did isolate the victims in rather secluded or nonpublic portions of the hotel. In both cases, Irons took his victims into an empty men's room, forced them into a stall and locked the stall door behind them. In both cases, Irons simply left his victims in the restroom and walked away.
Further, the evidence of the assault on the prior woman is relevant to rebut Iron's defense of consent by showing he had a common plan or scheme to befriend and then isolate his victims. Thus the evidence was properly admitted. See Williams, 621 So.2d at 417 (evidence of defendant's sexual assaults on other women was admissible to rebut the defense that the victim had consensual sex with *1223 him in exchange for drugs; the similar fact evidence tended to rebut the defense by showing a common plan or scheme to seek out and isolate victims likely not to complain or to complain unsuccessfully because of their involvement with drugs); Duckett v. State, 568 So.2d 891 (Fla.1990) (testimony of eighteen and nineteen year old women concerning police officer's sexual improprieties was admissible similar fact evidence in prosecution of officer for sexual battery and murder of eleven year old girl as it was relevant to establish the officer's mode of operation, identity, and common plan); Jackson v. State, 538 So.2d 533 (Fla. 5th DCA 1989) (testimony by victim in another case that the defendant tricked her into accompanying him to an isolated area where she was raped and that he claimed he paid for sex was admissible in rape prosecution to show modus operandi, plan or scheme and to rebut the defense claim of sex for pay).
Nor do we think the collateral crime evidence became a feature of the trial so that its prejudicial effect outweighed its probative value. The state presented twelve witnesses in its case-inchief. Only three witnessesthe prior victim and two officers testified to the collateral crime (the medical examiner testified that he examined the prior victim but this testimony was very brief). During their deliberations, the jurors requested that the testimony from the victim in this case be reread to them. They also requested a tape recorder to hear Irons' statements to the police. Thus the jury clearly focused on the charged offense and not on the collateral offense. See Zack v. State, 753 So.2d 9 (Fla.), cert. denied, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000) (even though several witnesses testified, Williams rule evidence did not become a feature of the trial); Schwab v. State, 636 So.2d 3 (Fla.), cert. denied, 513 U.S. 950, 115 S.Ct. 364, 130 L.Ed.2d 317 (1994) (similar fact evidence from three other victims did not become a feature of the trial where the state presented a significant amount of other evidence and testimony that outweighed the similar fact evidence).
Irons also argues that the trial court erred in allowing the state's medical expert, Dr. Colombo, to testify that the victim's multiple vaginal lacerations indicated non-consensual sex. The defense stipulated that Dr. Colombo is an expert in the field of examination and assessment of sexual battery victims. Dr. Colombo testified that the victim had three vaginal lacerations caused, in his opinion, by blunt trauma. When asked whether this type of injury was more consistent with consensual or non-consensual situations, the defense objected, claiming no basis for this opinion. The objection was sustained.
The prosecutor then asked Dr. Colombo questions about the medical examinations he has conducted and whether he was familiar with the literature and had attended any conferences in this area. Dr. Colombo testified that he has conducted an average of 80 to 100 examinations per year for many years, has probably done 800 examinations, and was familiar with the literature and research in this field.
Dr. Colombo then related the findings of a study of lacerations in females who had sexual intercourse. The study found that eleven percent of females who had consensual intercourse had vaginal lacerations whereas nearly eighty-nine percent of those who had non-consensual sexual intercourse had vaginal lacerations. Over defense objection, Dr. Colombo testified that the history given by the victim was consistent with his findings and examination.
A medical expert may give an opinion as to whether the victim's injuries are *1224 consistent with forced sexual intercourse. McLean v. State, 754 So.2d 176 (Fla. 2d DCA 2000)(medical expert may give an opinion as to whether injuries a victim have suffered are consistent with forced sexual intercourse); Russell v. State, 576 So.2d 389 (Fla. 1st DCA), rev. denied, 587 So.2d 1329 (Fla.1991) (admission of medical expert's opinion that victim's injuries were consistent with forced sexual intercourse based on evidence of small vaginal laceration was not an abuse of discretion); Ferradas v. State, 434 So.2d 24 (Fla. 3d DCA 1983) (trial court properly allowed physician from rape treatment center to testify that the victim's injuries were consistent with forced sexual intercourse). Thus Dr. Colombo's testimony was properly admitted.
With regard to the sentencing issue, Irons was convicted of sexual battery, a second degree felony, punishable by up to fifteen years is prison. §§ 794.011(5); 775.082(3)(c), Fla. Stat. Irons' guidelines score placed him in a sentencing range of 120.3 to 200.5 months (16.7 years) in prison. Thus, under the guidelines, Irons could have been sentenced to 16.7 years.[4] However, Irons was also qualified and sentenced as a prison releasee reoffender. Under that statute, the judge was required to sentence him to 15 years in prison.[5] However, the trial judge imposed a "combination" guidelines and prison releasee reoffender sentence of 15.7 years in prison, with the first 15 to be served as a prison releasee reoffender, followed by one year probation.
In State v. Wilson, 793 So.2d 1003 (Fla. 2d DCA 2001) our sister court concluded in a similar case that a defendant may not be sentenced under both the Prison Releasee Reoffender Act and the sentencing guidelines when the guidelines' sentence exceeds the mandatory sentence under the Act, and that the Act's sentence is mandatory. The court noted the two contradictory directives of the Act. Section 775.082(8)(a)(2) provides that a defendant who is a prison releasee reoffender is not eligible for sentencing under the sentencing guidelines and must be sentenced as a prison releasee reoffender. Section 775.082(8)(c) provides that "[n]othing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to section 775.084 or any other provision of law." It applied the statutory rule of construction ejusdem generis,[6] and the requirement that where there is an ambiguity in a criminal statute, the benefit of the doubt must be given to the interpretation most beneficial to the defendant.[7]
We agree with Judge Stringer's wellreasoned opinion in Wilson, although we also think the Legislature probably did not intend this result. No doubt in writing this statute it contemplated that the mandatory prison releasee reoffender sentences would exceed the guidelines sentences. However, in this case as well as in Wilson, that was not the situation because of the extensive prior criminal records of the defendants. This may be an issue the Legislature should consider revising in the *1225 future, if the results reached in this case and Wilson are not what was intended.
Accordingly, we affirm Irons' conviction for sexual battery, but we vacate the sentence and remand for the imposition of the mandatory prison releasee reoffender sentence.
Conviction AFFIRMED; Sentence VACATED; REMANDED.
PETERSON and ORFINGER, R.B., JJ., concur.
NOTES
[1] § 794.011(5), Fla. Stat.
[2] Irons also argues that the identification evidence from the collateral crimes was based on an illegal search. We rejected that argument in Irons v. State, 787 So.2d 975 (Fla. 5th DCA 2001).
[3] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[4] § 921.0014(2), Fla. Stat. (1997).
[5] See § 775.082(8)(a)1.d. and 775.082(8)(a) 2.c., Fla. Stat. (1997).
[6] Ejusdem generis means that where an enumeration of specific things is followed by some more general word, the general word will usually be construed to refer to things of the same kind or species as those specifically enumerated. Wilson.
[7] § 775.021(1), Fla. Stat. See State v. Huggins, ___ So.2d ___, 2001 WL 278107 (Fla. Mar.22, 2001).