850 So.2d 487 (2003)
Marvin NETTLES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-1523.
Supreme Court of Florida.
June 26, 2003.
*488 Nancy A. Daniels, Public Defender, and P. Douglas Brinkmeyer and Archie F. Gardner, Jr., Assistant Public Defenders, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Karen M. Holland, Assistant Attorney General, Tallahassee, FL, for Respondent.
LEWIS, J.
We have for review the decision in Nettles v. State, 819 So.2d 243 (Fla. 1st DCA 2002), which certified conflict with the decisions in State v. Wilson, 793 So.2d 1003 (Fla. 2d DCA 2001), and Irons v. State, 791 So.2d 1221 (Fla. 5th DCA 2001). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Initially, we note that although the First District has certified the existence of conflict, as more fully developed herein, our analysis leads us to conclude that the conflict is more apparent, as opposed to an actual conflict between the district courts of appeal. In our view, Wilson and Irons addressed the correlation between the Prison Releasee Reoffender Punishment Act (PRRPA)[1] and the sentencing guidelines, see Wilson, 793 So.2d at 1004; Irons, 791 So.2d at 1224, while Nettles addressed the interaction of the PRRPA with the *489 Criminal Punishment Code (CPC),[2] and, therefore, we are presented with an apparent conflict. We acknowledge that this factual scenario is very likely to arise again, and, therefore, we elect to exercise our discretion to resolve this issue now, rather than leave the trial courts with conflicting guidance as to how such offenders should be sentenced.
The issue presented in Nettles is whether it is permissible for a defendant to be sentenced under both the PRRPA and the CPC. This issue arises due to that which is argued to be somewhat conflicting language in provisions of both statutory schemes. In relevant part, the PRRPA provides:
If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:

....
d. For a felony of the third degree, by a term of imprisonment of 5 years.
§ 775.082(9)(a)3., Fla. Stat. (2000) (emphasis added). The PRRPA further states:
(c) Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law.
(d) 1. It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection....
§ 775.082(9)(c)-(d)1., Fla. Stat. (2000).[3] Further complicating the issue is a provision from the CPC which states, "If the lowest permissible sentence under the code exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the code must be imposed." § 921.0024(2), Fla. Stat. (2000).
The First District's decision in Nettles provides the relevant facts:
On July 30, 2001, [Marvin Nettles] entered a plea to two counts of attempted lewd and lascivious conduct, a third-degree felony, in exchange for concurrent PRRPA and CPC sentences of 66.4 months. [Nettles] does not dispute that he qualifies as a prison releasee reoffender. During the plea colloquy, the judge adequately advised [Nettles] that the PRRPA designation would cause him to serve the entire sentence day-for-day. See § 775.082(9)(b), Fla. Stat. (2000). Nevertheless, [Nettles] subsequently filed a Rule 3.800(b)(2) motion to correct sentencing error, alleging that his sentence was illegal pursuant to State v. Wilson, 793 So.2d 1003 (Fla. 2d DCA 2001), and Irons v. State, 791 So.2d 1221 (Fla. 5th DCA 2001). The trial court denied the motions:
The Defendant makes one claim of sentencing error. He alleges that the trial court erred in sentencing the Defendant under both the Prison Releasee Reoffender Punishment Act (PRRPA) and the Criminal Punishment Code (CPC) sentencing guidelines. The Defendant cites two very recent decisions from the Second and *490 Fifth District Courts of Appeal in support of his instant motion. This Court finds that the Defendant's argument is without merit.
Nettles, 819 So.2d at 243-44.
Under these facts, where a defendant's minimum CPC sentence is greater than the sentence provided for by the PRRPA, the sections of the PRRPA excerpted above pose an interpretation concern. While section 775.082(9)(c) authorizes a greater sentence under the habitual offender statute, or any other provision of law, section 775.082(9)(a)3. specifically excludes sentencing under the guidelines and mandates a five-year sentence. However, here, if the defendant is sentenced to only five years pursuant to the PRRPA, his sentence would not be to the fullest extent of the law as authorized by the CPC, and intended by the Legislature under section 775.082(9)(d)1. of the PRRPA.[4]
The facts presented in Wilson are very similar to the facts presented in Nettles. In Wilson, the defendant was eligible for sentencing under the PRRPA, but his minimum sentence under the sentencing guidelines at that time was greater than the sentence provided in the PRRPA.[5]See 793 So.2d at 1004. Noting the somewhat conflicting provisions of the PRRPA,[6] the Second District concluded that "the clear and unambiguous meaning of the [PRRPA]" could be ascertained through the language of the PRRPA providing, "such defendant is not eligible for sentencing under the guidelines." Id. at 1005. Following this reasoning, the district court concluded that "a defendant sentenced under section 775.082(8) cannot be sentenced under the sentencing guidelines and must be sentenced according to the provisions of the PRRPA." Id.
The next step in the district court's analysis was to determine whether the provision of the PRRPA authorizing the imposition of a greater sentence under either the habitual offender statute or "any other provision of law" prevailed over the PRRPA's exclusion of a sentence pursuant to the guidelines. See id.[7] The court examined the issue under two principles of statutory construction. First, the court held that a general provision cannot override a specific exclusion. See id. at 1006. Therefore, the general language of "any other provision of law" could not supersede the specific provision excluding sentencing under the guidelines. See id. Second, the court applied the principle of ejusdem generis, which provides that "where an enumeration of specific things is followed by *491 some more general word, the general word will usually be construed to refer to things of the same kind or species as those specifically enumerated." Id. (quoting Green v. State, 604 So.2d 471, 472 (Fla.1992) ). The Second District concluded that under this principle, "it would seem that the phrase `any other provision of law' should more appropriately be construed to mean other penalty enhancement statutes similar to [the habitual offender statute] rather than the general sentencing provisions of the sentencing guidelines." Id.
Having determined that the provision of the PRRPA which specifically precludes sentencing under the guidelines should take precedence, the Wilson court held that the defendant should be sentenced only pursuant to the mandatory sentence provided by the PRRPA, and could not be subject to the greater sentence under the guidelines. See id. The court recognized that its holding was probably contrary to the legislative intent of the PRRPA, but reasoned that because the language of the statute created an ambiguity, it was necessary to interpret the ambiguity in the manner most favorable to the defendant. See id.
The Fifth District, in Irons, followed the holding and reasoning of the Wilson court when presented with the identical issue.[8] As in Wilson, the Fifth District also noted that the result probably did not comport with the legislative intent. The court acknowledged:
We agree with Judge Stringer's well-reasoned opinion in Wilson, although we also think the Legislature probably did not intend this result. No doubt in writing this statute it contemplated that the mandatory prison releasee reoffender sentences would exceed the guidelines sentences. However, in this case as well as in Wilson, that was not the situation because of the extensive prior criminal records of the defendants. This may be an issue the Legislature should consider revising in the future, if the results reached in this case and Wilson are not what was intended.
Irons, 791 So.2d at 1224-25.
Contrary to the holdings in Wilson and Irons, the Nettles court determined that Nettles' sentence of 66.4 months was not illegal because, according to the First District's analysis, the sentence was authorized by both the CPC and the PRRPA. See Nettles, 819 So.2d at 247. Specifically, the court reasoned:
We read the subsections at issue in pari materia, and in light of the legislative direction that offenders previously released from prison "be punished to the fullest extent of the law and as provided in this subsection ...." § 775.082(9)(d)1., Fla. Stat. (2000). Accordingly, once a defendant is properly designated as a prison releasee reoffender, the defendant would not be barred from a CPC sentence greater than the mandatory sentence as specified in the PRRPA.
Id. at 245.
In analyzing the provision of the PRRPA that states, "Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines," § 775.082(9)(a)3., Fla. Stat. (2000), the First District reasoned that by using the word "eligible," the Legislature referred to a potential benefit that *492 a defendant could receive by being sentenced under the guidelines as opposed to the PRRPA. See 819 So.2d at 245. Clearly, under the facts presented here, Nettles would not benefit from being sentenced under the CPC, but would suffer a detriment in the form of a longer sentence. Therefore, the First District reasoned that this provision actually supports the court's holding that a defendant can be sentenced to a term greater than that provided under the PRRPA. See id.
Further, the First District also relied upon the decisions of State v. Cotton, 769 So.2d 345 (Fla.2000), and Grant v. State, 770 So.2d 655 (Fla.2000), in which this Court referred to the PRRPA as a "mandatory minimum statute," which establishes a sentencing "floor," and allows for more severe punishment as authorized by law. See 819 So.2d at 246. The district court concluded:
Respectfully, we do not believe that Cotton and Grant support the result reached in Wilson and followed by Irons. In our view, the PRRPA sentence should be viewed as a mandatory minimum of five years. Any remaining portion of [Nettles'] sentence would be served pursuant to the CPC.
Id. The district court noted that in both Cotton and Grant this Court "expressly recognized that a greater sentence may be imposed pursuant to either the habitual offender statute or any other provision of law, and the [C]ourt did not see fit to limit the `any other provision of law' language." Id. Therefore, the First District reasoned that a sentence pursuant to both the PRRPA and the CPC is consistent with the language of the PRRPA and our holdings in Cotton and Grant. See id.
Finally, in resolving the apparent conflict created by the provisions of the PRRPA, the First District enumerated an independent basis for its decision by holding that section 775.082(9)(a)3., which specifically excludes sentencing under the guidelines, is not applicable to sentencing under the CPC. The court noted that the CPC repealed and replaced the guidelines for all crimes committed after October 1, 1998, yet the guidelines are still applicable to those crimes committed before the effective date. See id. at 247. The court reasoned that the Legislature, by including the language about the sentencing guidelines, "did not contemplate that it was enacting a provision that might be construed by some as barring a CPC sentence." Id.
Reflecting the court's holding that Nettles' sentence was permissible under both the PRRPA and the CPC, the court remanded to the trial court with instructions that the trial court correct the sentence to reflect that the first 60 months of Nettles' sentence would be served pursuant to the PRRPA, while the remaining 6.4 months would be served under the CPC. See id. at 247. The court reached a different decision than the courts in both Wilson and Irons; therefore, it certified conflict with those decisions to this Court. See id. at 243.
In our view, the provisions of the PRRPA which require interpretive analysis here can be reconciled. Therefore, we conclude that a defendant may be sentenced pursuant to both the PRRPA and the CPC. Thus, the sentence agreed to by Nettles, imposed by the trial court, and affirmed by the First District Court of Appeal was a legal sentence.
We reject the contention that section 775.082(9)(a)3., which provides that a defendant eligible for sentencing under the PRRPA "is not eligible for sentencing under the sentencing guidelines," renders Nettles' sentence illegal. In Jones v. State, 813 So.2d 22 (Fla.2002), we recognized *493 that the establishment of the Criminal Punishment Code in 1998 made substantial changes relating to the sentencing guidelines. See id. at 25. Under the former sentencing guidelines, a narrow range of permissible sentences was determined through a strict mathematical formula. See § 921.0014(2), Fla. Stat. (2000). It was then within the judge's discretion to sentence the defendant within that narrow range. In contrast, under the now-applicable CPC, "[t]he permissible range for sentencing shall be the lowest permissible sentence [as determined by the number of total sentencing points] up to and including the statutory maximum." § 921.0024(2), Fla. Stat. (2000). Conceptually, the CPC and the former sentencing guidelines are not synonymous, and, therefore, the PRRPA's reference to the sentencing guidelines in section 775.082(9)(a)3. does not, as the dissent maintains, forbid sentencing under the CPC.
Notably, if we were to follow the logic of the dissent and hold that Nettles could only be sentenced to the 60 months provided by the PRRPA, the result would be a sentence less than that which he would have received, namely 66.4 months, had he not been sentenced as a prison releasee reoffender. Such an interpretation and application would completely ignore the intent of the Legislature in enacting the PRRPA. The Legislature unquestionably intended that those sentenced under the PRRPA would "be punished to the fullest extent of the law." § 775.082(9)(d)1., Fla. Stat. (2000). We have repeatedly held that "`[w]hen construing a statutory provision, legislative intent is the polestar that guides' the Court's inquiry. Legislative intent is determined primarily from the language of a statute." State v. Rife, 789 So.2d 288, 292 (Fla.2001) (quoting McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998)). As Nettles does not contest that he qualifies for sentencing as a prison releasee reoffender, his negotiated sentence of 66.4 months, with the first 60 months being served pursuant to the PRRPA and the remaining 6.4 months served under the CPC, effectuates the Legislature's intent in this case and comports with the applicable statutory provisions.
The First District properly relied upon our decisions in Cotton and Grant in affirming Nettles' sentence. In Cotton, we specifically held that the PRRPA "establishes a mandatory minimum sentencing scheme" and the act "is not unconstitutional on its face as violative of separation of powers principles." 769 So.2d at 354. Further, we noted:
[E]ven when the Act is properly viewed as a mandatory minimum statute, its effect is to establish a sentencing "floor." If a defendant is eligible for a harsher sentence "pursuant to [the habitual offender statute] or any other provision of law," the court may, in its discretion, impose the harsher sentence.
Id. (quoting § 775.082(8)(c), Fla. Stat. (1997)). Finally, we enumerated specific findings that were contemplated by the Legislature:
In passing the Act, the Legislature found that (1) recent court decisions have mandated the early release of violent felony offenders; (2) the people of the State and its visitors deserve public safety and protection from violent felony offenders who have previously been sentenced to prison and who continue to prey on society by reoffending; and (3) "the best deterrent to prevent prison releasees from committing future crimes is to require that any releasee who commits new serious felonies must be sentenced to the maximum term of incarceration allowed by law, and must serve *494 100 percent of the court-imposed sentence."
Id. at 355. Clearly, we have determined that the sentence provided by the PRRPA is not a mandatory sentence which must be imposed upon an eligible defendant. Rather it is a sentencing "floor," which a judge may exceed if authorized by another provision of the law, such as the CPC.
We reiterated the rationale employed in Cotton in our decision in Grant. In Grant, a defendant had been sentenced to fifteen years as a habitual felony offender, with a mandatory minimum term of fifteen years as a prison releasee reoffender. See 770 So.2d at 657. The defendant challenged his sentence, claiming it violated the prohibition against double jeopardy. See id. Relying on Cotton, we again held that the PRRPA provides a mandatory minimum sentence, and, therefore, "the imposition of an applicable longer, concurrent term of imprisonment with a [PRRPA] mandatory minimum sentence does not violate double jeopardy." Id. at 658.[9] We also relied on the intent of the Legislature in rendering our decision in Grant, reasoning that "the Legislature's intent both to provide a mandatory minimum term of imprisonment pursuant to the [PRRPA] and to allow for imposition of the greatest sentence authorized by law is clear." Id. at 659.
Applying the principles stated in Cotton and Grant, in addition to the statutory provisions, we again hold that the PRRPA establishes a mandatory minimum sentence, a "sentencing floor," and no provision of the PRRPA prevents a court "from imposing a greater sentence of incarceration as authorized by law." § 775.082(9)(c). Here, Nettles' mandatory minimum PRRPA sentence was 60 months, while his minimum sentence under the CPC was 66.4 months. Therefore, Nettles' sentence of 66.4 months, with 60 months being served under the PRRPA and 6.4 months being served pursuant to the CPC, is a legal sentence. As we have held, it is authorized by the PRRPA, but more importantly, it is mandated by the CPC. The CPC provides, "If the lowest permissible sentence under the [CPC] exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the [CPC] must be imposed." § 921.0024(2), Fla. Stat. (2000). Under this provision, the sentencing court had no option but to sentence Nettles to 66.4 months in prison.
Finally, we note that Nettles' argument pertaining to the application of the rule of lenity is misplaced. The rule of lenity provides, "The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2000). Although this rule is applicable to sentencing provisions, see Rife, 789 So.2d at 294, it is not necessary for us to employ the rule here because we do not agree that the provisions of the PRRPA create an ambiguity or generate differing reasonable constructions. See Seagrave v. State, 802 So.2d 281, 291 (Fla.2001) (holding that rule of lenity is not applicable *495 where interpretation offered by defendant is not a reasonable construction). Although one may find differing results with regard to PRRPA and guideline sentences in Wilson and Irons, and the PRRPA and CPC sentences as determined by the First District here, such does not render the applicable provisions ambiguous. As we noted in Seagrave, the fact that appellate courts may differ with regard to the application of statutory provisions does not necessarily render a statute ambiguous. See id. at 291 n. 15. Here, having determined that the PRRPA's reference to the former sentencing guidelines does not restrict sentencing under the CPC, and further utilizing legislative intent, we are not left with an ambiguous statute. Therefore, application of the rule of lenity is not necessary. Nettles was properly and legally sentenced pursuant to both the PRRPA and the CPC.
The decision of the First District Court of Appeal is approved, and to the extent they are inconsistent with this opinion, the Wilson and Irons decisions are disapproved.
It is so ordered.
WELLS, PARIENTE, CANTERO and BELL, JJ., concur.
CANTERO, J., concurs specially with an opinion, in which PARIENTE and BELL, JJ., concur.
QUINCE, J., dissents with an opinion, in which ANSTEAD, C.J., concurs.
CANTERO, J., concurring specially.
I agree with the majority opinion. I write, however, to caution that the statement in the last paragraph expressing a qualified disapproval of Wilson and Irons should not be read as disapproval of the results in those cases. As the majority opinion recognizes, Nettles involved a different issue than did Wilson and Irons. The issue here is whether a defendant can be sentenced under both the PRRPA and the CPC. See majority op. at 488-89. In the latter two cases the issue was whether a defendant can be sentenced under both the PRRPA and the sentencing guidelines. Wilson, 793 So.2d at 1004; Irons, 791 So.2d at 1224. The difference is critical because the PRRPA specifically prohibits application of the sentencing guidelines, not the CPC. The majority correctly concludes that no actual conflict exists between the three cases.
The statutory language raising the issue in all the cases comes from the PRRPA's statement that a defendant proven to be a prison releasee reoffender "is not eligible for sentencing under the sentencing guidelines," § 775.082(9)(a)3., Fla. Stat. (2000), and the PRRPA's contrasting statements that the PRRPA does not prevent the imposition of a greater sentence under "any other provision of law" and that each defendant should be punished "to the fullest extent of the law." § 775.082(9)(c)-(d)1., Fla. Stat. (2000). The First District Court of Appeal in Nettles correctly concluded that the PRRPA's exclusion of the sentencing guidelines did not imply a similar exclusion of the CPC. See 819 So.2d at 247. As the district court explained, the law adopting the CPC expressly repealed the sentencing guidelines, leaving them in effect for crimes committed before October 1, 1998, and established the CPC as the new sentencing scheme. Id. (citing ch. 97-194, §§ 1, 2, at 3674, Laws of Fla.). The timing of the two enactments further supports the inference that the Legislature knowingly intended only to refer to the sentencing guidelines in section 775.082(9)(a)3. The Legislature created both the CPC and the PRRPA in the same session. See ch. 97-194, at 3674, 3728, Laws of Fla. (creating CPC); ch. 97-239, at 4398, 4404, Laws of Fla. (creating *496 PRRPA). Therefore, when the Legislature excluded application of the sentencing guidelines in the PRRPA, it knew that it was simultaneously, but in a different bill, repealing the sentencing guidelines and replacing them with a different sentencing scheme, the CPC. See Nettles, 819 So.2d at 247 ("The Legislature therefore did not contemplate that it was enacting a provision that might be construed by some as barring a CPC sentence when it simply noted that a prison releasee reoffender would not be eligible for a guidelines sentence.").
The district courts in Wilson and Irons correctly found that a defendant cannot be sentenced under both the sentencing guidelines and the PRRPA because the PRRPA specifically precludes application of the guidelines. See § 775.082(9)(a)3., Fla. Stat. (2000); Wilson, 793 So.2d at 1006; Irons, 791 So.2d at 1224-25. In Wilson, however, the Second District Court of Appeal went further, determining that the reference in section 775.082(9)(c) to "any other provision of law" applies only to enhanced penalty provisions, such as the habitual offender statute, and not to a general sentencing statute. 793 So.2d at 1006; accord Irons, 791 So.2d at 1224. This Court does not understand the phrase "any other provision of law" to be so limited. See Grant v. State, 770 So.2d 655, 659 (Fla.2000) (noting that the clear legislative intent of the PRRPA is to provide a mandatory minimum term and allow the "imposition of the greatest sentence authorized by law"); State v. Cotton, 769 So.2d 345, 354 (Fla.2000) (noting that the PRRPA establishes a sentencing "floor" and a defendant remains eligible for harsher sentencing under "any other provision of law"); see also Nettles, 819 So.2d at 245-46 (disagreeing with limitation of this phrase in Wilson and Irons).
Accordingly, the results in all three casesNettles Wilson, and Ironsare correct. The majority's limited disapproval of Wilson and Irons applies only to part of their analyses.
PARIENTE and BELL, JJ. concur.
QUINCE, dissenting.
I dissent from the majority's determination that a prison releasee reoffender may be sentenced under both the Prison Releasee Reoffender Punishment Act (PRRPA) and the Criminal Punishment Code (CPC); instead I would follow the reasoning of the district courts in State v. Wilson, 793 So.2d 1003 (Fla. 2d DCA 2001), and Irons v. State, 791 So.2d 1221 (Fla. 5th DCA 2001), and find that a defendant may not be sentenced under both of these provisions. I reach this conclusion because the CPC is the functional equivalent of the sentencing guidelines for all crimes committed after October 1, 1998. As the majority points out, the pre-code sentencing guidelines are still applicable to crimes committed before October 1, 1998. On that date the prior guidelines were replaced by other guidelines which are now referred to as the CPC. The CPC is nonetheless a guideline for the calculation of sentences for crimes committed after October 1, 1998.[10] The fact that the name has changed does not change the fact that the Legislature specifically provided for use of the PRRPA and not guidelines where the defendant qualifies for PRRPA treatment.
*497 Moreover, such an interpretation comports with the overall purpose of the PRRPA, that is, having the defendant serve the harsher sentence. While in the instant case the number of months pursuant to the PRRPA is somewhat shorter than the number of months under the CPC, the defendant will serve one hundred percent of the time imposed under the PRRPA. That is a harsher sentence than one based solely on the guidelines/CPC.
For these reasons I would find that the defendant's sentence imposed under both the PRRPA and the CPC is illegal and would remand this case for sentencing under the PRRPA only.
ANSTEAD, C.J., concurs.
NOTES
[1] § 775.082(9), Fla. Stat. (2000).
[2] §§ 921.002-.0027, Fla. Stat. (2000).
[3] Section 775.084, referred to in section 775.082(9)(c), is commonly known as the habitual offender statute.
[4] Resolution of this issue, i.e., under which statute or statutes Nettles should be sentenced, is imperative because the PRRPA requires that a defendant serve one hundred percent of his sentence. As a result, a defendant sentenced under the PRRPA is not eligible for gain time, see § 775.082(9)(b), whereas a defendant is eligible for gain time if sentenced under the CPC.
[5] As noted above, Wilson involved the interaction between the PRRPA and the sentencing guidelines, while Nettles examined the relationship between the PRRPA and the CPC.
[6] Wilson involved the 1997 version of the PRRPA, which was then codified in section 775.082(8). While the PRRPA was subsequently renumbered as section 775.082(9) in 1999, the language remained the same.
[7] Notably, the Second District held that our decision in Grant v. State, 770 So.2d 655 (Fla.2000), which authorized the trial court to impose a PRRPA sentence and an habitual offender sentence where the habitual offender sentence was greater, was not applicable to the issue presented in Wilson. See Wilson, 793 So.2d at 1005 n. 1. The court reasoned that "application of the habitual felony offender statute is specifically authorized in [the PRRPA], and unlike [Wilson ], there is no contrary provision prohibiting a prison releasee reoffender from being sentenced as a habitual felony offender." Id.
[8] As in Wilson, Irons presented the issue of the relationship between the PRRPA and the sentencing guidelines, as opposed to the CPC. Irons also interpreted the PRRPA as codified in 1997, as opposed to the identical, yet renumbered, 2000 version of the statute.
[9] Although we held that the sentence did not violate double jeopardy, we did nevertheless determine that the defendant's sentence was illegal. See Grant, 770 So.2d at 659. We reasoned that because the PRRPA "`only authorizes the court to deviate from the [Act's] sentencing scheme to impose a greater sentence of incarceration,' a trial court is `without authority to sentence [a defendant to an equal sentence] under the habitual felony offender statute,' even where such sentence is imposed concurrently with the [PRRPA] sentence. Thus, the trial court erred in imposing two concurrent, equal sentences in this case, not because such sentencing violated double jeopardy, but because it is not authorized by the Act." Id. (quoting Walls v. State, 765 So.2d 733, 734 (Fla. 1st DCA 2000)).
[10] A comparison of the sentencing guidelines and the CPC indicates that the same terms are used in both and defined in an identical manner. Compare § 921.0011 with § 921.0021. Moreover, the same offense severity ranking chart is used in both sections of the statutes. Compare § 921.0012 with § 921.0022.