NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| ANTONIO D. TAYLOR, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Case No. 2D16-3130 |
| | ) |
| STATE OF FLORIDA, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Opinion filed December 6, 2017.

Appeal from the Circuit Court for Polk
County; Wayne M. Durden, Judge.

Howard L. Dimmig, II, Public Defender, and
Jean Marie Henne, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Chelsea S. Alper,
Assistant Attorney General, Tampa, for
Appellee.


PER CURIAM.

Antonio Taylor appeals his life sentence as a prison releasee reoffender

for armed burglary of a dwelling. His sentence is reversed based on this court's opinion

in Lewars v. State, 42 Fla. L. Weekly D1098 (Fla. 2d DCA May 12, 2017), pending

review, No. SC17-1002, 2017 WL 4022360 (Fla. Sept. 13, 2017). Given the Florida

Supreme Court's order staying the mandate and further proceedings in <u>Lewars</u>, the mandate in this case is likewise stayed pending disposition of the <u>Lewars</u> petition.  <u>See</u> <u>State v. Lewars</u>, No. SC17-1002 (Fla. May 30, 2017) (order staying proceedings).

SILBERMAN and SALARIO, JJ., Concur.

BLACK, J., Concurs with opinion.

As <u>Lewars</u> is the controlling precedent in this district, I concur in the reversal of Taylor's sentence and designation as a prison releasee reoffender.  Both <u>Lewars</u> and this case present the issue of interpreting section 775.082(9)(a)(1), Florida Statutes, part of the Prison Releasee Reoffender Punishment Act (the Act).  I write to express my agreement that resolution of the issue rests on a plain language analysis and my concerns with how this statute has been interpreted in view of that analysis.

Taylor, like Lewars, has asked this court to interpret the following language:  " 'Prison releasee reoffender' means any defendant who commits, or attempts to commit [an enumerated offense] within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor . . . ."  § 775.082(9)(a)(1).  Taylor contends that he does not qualify as a prison releasee reoffender (PRR) because he was sentenced to one year and one day in prison on his prior conviction and was given credit for time served, resulting not in a transfer to a Department of Corrections (DOC) prison where he might otherwise have served his

prison sentence but in his physical release from the county jail.[1]  At the time Taylor was sentenced, the First, Fourth, and Fifth Districts had addressed the issue.  See State v. Wright, 180 So. 3d 1043 (Fla. 1st DCA 2015); Taylor v. State, 114 So. 3d 355 (Fla. 4th DCA 2013); Louzon v. State, 78 So. 3d 678 (Fla. 5th DCA 2012).  The defendants in Wright and Louzon were similarly situated to Taylor: they had each been convicted of a felony, sentenced to a prison term, committed to the custody of the DOC, and ordered to be delivered to the DOC, but released from DOC custody by directive of the DOC and physically released from a county jail by directive of the DOC because of jail credit accumulated during the pendency of their respective cases.[2]  Wright, 180 So. 3d at 1045-46; Louzon, 78 So. 3d at 680.  The defendant in Taylor had been convicted of a federal crime and sentenced to a term of imprisonment in a federal correctional facility

_____

[1]The penitentiary pack introduced by the State at Taylor's sentencing hearing indicated that Taylor was released from DOC's "Central Office."  See also State v. Wright, 180 So. 3d 1043, 1044 (Fla. 1st DCA 2015) (stating that defendant was released from the "Central Office").  The documents established that Taylor had been transferred from the county to the "Central Office" and then from "Central Office" back to the county.  See § 944.17(7), Fla. Stat. (2016) ("[T]he department may transfer prisoners from one institution to another institution in the correctional system."); 944.17(8) ("If a state prisoner's presence is required in court for any reason after the sheriff or chief correctional officer has relinquished custody to the department . . . [n]either the court nor the sheriff or chief correctional officer may release such prisoner without first obtaining confirmation from the department that the prisoner has no commitments from other jurisdictions or outstanding detainers.").  Although not discussed in Lewars, it appears that Lewars was also released from the "Central Office" by the DOC.

[2]The sole issue addressed in the Wright opinion was the applicability of the PRR designation to Wright.  Notably, this court has previously affirmed the denial of a motion to correct illegal sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(a) with citation to Wright.  See Anderson v. State, 2D16-3288, 2017 WL 685633 (Fla. 2d DCA Feb. 22, 2017) (table decision) (citing Wright in a per curiam affirmance).  We have also cited Louzon.  See Bagley v. State, 177 So. 3d 612 (Fla. 2d DCA 2015) (table decision) (citing Louzon in a per curiam affirmance).

- 3 -

but was released from federal custody while housed at the county jail. Taylor, 114 So. 3d at 355-56. In all three cases, the courts determined that the defendants qualified as PRRs. Relying on those cases, the trial court in our case sentenced Taylor as a PRR on the armed burglary of a dwelling conviction. The legality of his sentence as a PRR is the only issue Taylor has raised in this appeal.

Whether a defendant qualifies as a PRR under the language of the Act is a question of statutory interpretation. Lewars, 42 Fla. L. Weekly at D1099. When considering an unambiguous statute, courts are not permitted to construe the statutory language "in a way which would extend, modify, or *limit,* its express terms or its *reasonable and obvious implications*. To do so would be an abrogation of legislative power." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).[3] This principle "reflects the constitutional obligation of the judiciary to respect the separate powers of the legislature." State v. Brigham, 694 So. 2d 793, 797 (Fla. 2d DCA 1997).

"When a term is undefined by statute, '[o]ne of the most fundamental tenets of statutory construction' requires that we give a statutory term 'its plain and ordinary meaning.' " Rollins v. Pizzarelli, 761 So. 2d 294, 298 (Fla. 2000) (alteration in original) (quoting Green v. State, 604 So. 2d 471, 473 (Fla. 1992)). However, "in considering the meaning of particular words and phrases, courts must also distinguish between terms of art that may have specialized meanings and other words that are

---

[3]"[T]he fact that appellate courts may differ with regard to the application of statutory provisions does not necessarily render a statute ambiguous." Nettles v. State, 850 So. 2d 487, 495 (Fla. 2003) (citing Seagrave v. State, 802 So. 2d 281, 291 n.15 (Fla. 2001)).

ordinarily given a dictionary definition." OB/GYN Specialists of Palm Beaches, P.A. v. Mejia, 134 So. 3d 1084, 1088 (Fla. 4th DCA 2014); see also Crews v. Fla. Pub. Emp'rs Council 79, AFSCME, 113 So. 3d 1063, 1069 (Fla. 1st DCA 2013) ("[C]ourts should give words in a statute their ordinary and everyday meaning unless the context reveals that a technical meaning applies." (citing State v. Brown, 412 So. 2d 426, 428 (Fla. 4th DCA 1982))). Here, related statutory provisions define the relevant terms. See, e.g., Hopkins v. State, 105 So. 3d 470, 472-73 (Fla. 2012) (applying definitions from chapter 985 when interpreting section 784.082, Florida Statutes (2007), to determine whether a "detention facility" as used in section 784.082 included juvenile detention centers).

The Act requires that a defendant previously have been "released from a state correctional facility operated by the [DOC]." § 775.082(9)(a)(1). Thus, the phrase "state correctional facility" is of primary importance to the question presented by this case and by Lewars. And although Lewars focuses on the definition of "facility," the statute is specific to a "state correctional facility," making the entire phrase the plain language which we must apply. "State correctional facility" is a term of art not defined within the Act; however, the definitions section of the State Correctional System chapter defines "state correctional institution" as "any prison, road camp, prison industry, prison forestry camp, or any prison camp or prison farm or other correctional facility, temporary or permanent, in which prisoners are housed, worked, or maintained, under the custody and jurisdiction of the [DOC]." § 944.02(8), Fla. Stat. (2016) (emphasis added). "State prison" is defined by section 944.08(1) "as a place of confinement or punishment for a crime" to "be construed to mean and refer to the custody of the Department of Corrections within the state correctional system." (Emphasis added.) A state

- 5 -

correctional facility, as used in the Act, would then be a state correctional institution under the applicable definition; the words are interchangeable for definitional purposes here. See also § 775.082(9)(a)(2) (including releasees from "correctional institution[s] of . . . the United States" and further establishing that facility and institution are interchangeable for definitional purposes); § 944.09(1)(e) ("The [DOC] has authority to adopt rules . . . relating to . . . the operation and management of the correctional institution or facility and its personnel and functions." (emphasis added)). Thus, in pertinent part, a "state correctional facility operated by the [DOC]" means a prison or "other correctional facility" in which "prisoners are housed . . . under the custody and jurisdiction of the department." See §§ 775.082(9)(a)(1), 944.02(8).

In turn, "prisoner" is defined to include "any person committed to or detained in any municipal or county jail or state prison, prison farm, or penitentiary, or to the custody of the [DOC] pursuant to lawful authority." § 944.02(6) (emphasis added); see also § 944.17(1) ("Each prisoner sentenced to the state penitentiary shall be committed by the court to the custody of the [DOC]."); § 945.42(7), Fla. Stat. (2016) (" 'Inmate' means any person committed to the custody of the [DOC]"). Thus, it is a person's status of being under the jurisdiction and custody of the DOC that defines prisoner. "State correctional facility" must then include both prison buildings as well as other correctional facilities housing prisoners under the custody and control of the DOC. Cf. Garner v. State, 839 So. 2d 924, 925-26 (Fla. 4th DCA 2003) (concluding that legislative intent and statutory terms did not equate Jimmy Ryce facilities with

correctional facilities for purposes of PRR designation).[4]  These provisions make clear that a defendant who has been committed to the custody of the DOC is a prisoner such that the building in which he is housed—temporarily or permanently—is a state correctional facility.

To the extent that the meaning of section 775.082(9)(a)(1) turns on the phrase "operated by" rather than "state correctional facility," section 944.171(1) provides that the DOC "may contract with county or municipal facilities for the purposes of housing inmates committed to the [DOC]," and that an inmate in another facility "remains under the jurisdiction of the [DOC]."  § 944.171(1), (1)(b).[5]  Section 945.025, Jurisdiction of Department, provides that the DOC's operational jurisdiction extends to

---

[4]Moreover, a defendant must have been "released from a state correctional facility."  § 775.082(9)(a)(1) (emphasis added).  This court has held that, in this context, "release" "means actual release from a state prison sentence" and not the defendant's "physical[] release[] from a state correctional facility" or his "release from a temporary confinement that happens to be in state prison."  Brinson v. State, 851 So. 2d 815, 816 (Fla. 2d DCA 2003) (emphasis added); see also Calloway v. State, 914 So. 2d 12, 14 (Fla. 2d DCA 2005) (affirming sentence as PRR and recognizing "that the fact of Calloway's date of release from his prior prison sentence is not the same as a bare fact of a prior conviction" (emphasis added)); Fitzpatrick v. State, 868 So. 2d 615, 616 (Fla. 2d DCA 2004) (stating that for PRR purposes, "it is the fact of defendant's release from custody, not his status of being in custody, that is relevant" (second emphasis added)).  Brinson represents the inverse of Taylor's case in that Brinson committed the offense for which he was designated a PRR after being physically released from a DOC building following a temporary confinement based on an alleged conditional release violation.  Id.; see also § 947.1405, Fla. Stat. (1994).  However, I note that the Act was amended in 1999 to include "any defendant who commits or attempts to commit any" qualifying offense "while the defendant was serving a prison sentence or on escape status from a state correctional facility operated by the Department of Corrections or a private vendor."  Ch. 99-188, § 2, Laws of Fla.; see also § 775.082(9)(a)(2).

[5]Whether the county facility in which Taylor was held following his commitment to the DOC was under contract with the DOC is a question unanswered by the record before this court.  However, the State could present evidence on the issue to establish that Taylor qualifies as a PRR.

"other correctional facilities, including detention facilities of varying levels of security, work-release facilities, and community correctional facilities, halfway houses, and other approved community residential and nonresidential facilities and programs." § 945.025(3). Further, "[t]he DOC is 'responsible for the inmates and for the operation of, and shall have supervisory and protective care, custody, and control of, all buildings, grounds, property of, and matters connected with, the correctional system.' " Yisrael v. State, 993 So. 2d 952, 959 (Fla. 2008) (quoting § 945.04(1), Fla. Stat. (2001)). These statutory provisions further suggest that a county jail qualifies as a state correctional institution operated by the DOC once a defendant has been convicted and sentenced such that he is in the custody and under the jurisdiction of the DOC.

By their plain language, these statutes lead to a conclusion that it is a defendant's status as having been committed to the custody of the DOC to serve a prison term, serving that term, and being released from DOC custody within three years of committing the qualifying offense that classifies a defendant as a PRR. Cf. State v. Hackley, 95 So. 3d 92, 94 (Fla. 2012) ("The plain language of the burglary, assault, and PRR statutes leads us to conclude that burglary of a conveyance with an assault is a qualifying PRR offense.").

"[I]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Fla. Dep't of Children & Family Servs. v. P.E., 14 So. 3d 228, 234 (Fla. 2009) (alteration in original) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992)); see also Thompson v. State, 695 So. 2d 691, 692 (Fla. 1997) ("[P]hrases within a statute are not to be read in isolation, but rather should be construed within the context of the entire section."). That

- 8 -

is, "[statutory language] must be taken in context, so that its meaning may be illuminated in the light of the statutory scheme of which it is a part." O'Hara v. State, 964 So. 2d 839, 843 (Fla. 2d DCA 2007). In that regard, section 775.082(9)(d) provides: "It is the intent of the [l]egislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection . . . ." § 775.082(9)(d)(1) (emphasis added).

In chapter 97-239, Laws of Florida, which created the Act, the legislature expressly defined the Act as providing for enhanced sentencing "under specified circumstances when the reoffender has been released from correctional custody." Ch. 97-239, at 4397, Laws of Fla. (emphasis added). The legislature also stated that Florida residents and visitors deserve protection "from violent felony offenders who have previously been sentenced to prison and who continue to prey on society by reoffending." Id. (emphasis added).

The Florida Supreme Court has repeatedly recognized that the Act is "rationally related to the legitimate state interests of punishing recidivists more severely than first time offenders and protecting the public from repeat criminal offenders." Grant v. State, 770 So. 2d 655, 661 (Fla. 2000) (quoting Rollinson v. State, 743 So. 2d 585, 589 (Fla. 4th DCA 1999)); see also Nettles v. State, 850 So. 2d 487, 493 (Fla. 2003). In that respect, "[t]he Act increases the penalty for a crime committed after its enactment, based upon release from a term of imprisonment resulting from a conviction which occurred prior to the Act." Grant, 770 So. 2d at 661.

In addition to creating the Act, chapter 97-239 amended section 944.705 to provide that the DOC must "notify every inmate . . . in the inmate's release

- 9 -

documents, that the inmate may be sentenced pursuant to [the Act] if the inmate commits any felony offense described in [the Act] within 3 years after the inmate's release." This provision further supports that section 775.082(9) applies to an otherwise qualifying prisoner released from DOC's custody. Cf. State v. Ramsey, 475 So. 2d 671, 673 (Fla. 1985) (stating that the statutory phrase " 'transported to or from a place of confinement' should not be so narrowly construed as to vitiate the intent of the statute").

The First, Fourth, and Fifth Districts have all held that to accept Taylor's argument "would be inconsistent with the [l]egislature's clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence." Wright, 180 So. 3d at 1045; Louzon, 78 So. 3d at 681; accord Taylor, 114 So. 3d at 356. Although the First, Fourth, and Fifth Districts did not discuss defined statutory terms in their analyses, their holdings are consistent with the above plain language analysis. Nothing in the statutory text or context indicates that only those recidivists who were previously given a prison sentence, served at least some part of that sentence in a DOC building, and were then physically released from that building must be punished more severely. Applying the statute in such a way improperly excludes those defendants who, like Taylor, were awarded jail credit amounting to time-served on a prison sentence; those who were transferred to a facility awaiting postconviction hearings; those who were temporarily detained in a prison;[6] or those who were transferred to another facility for medical care

---

[6]See Brinson, 851 So. 2d at 816 (concluding that Brinson's postconviction claim that he was not a PRR was not refuted by the record his physical release was "from temporary detention [in a DOC building] . . . while awaiting action of the Parole Commission"); see also § 947.141, Fla. Stat. (1994). Under the Lewars reading of the

- 10 -

or to county jail to face unrelated charges.[7]  Such an interpretation is at odds with the express statutory language requiring more severe punishment for reoffenders who were released from correctional custody within three years of commission of their latest offenses.

Finally, I note that where the PRR designation is not supported by the record, at a new sentencing hearing on remand the State may present additional or other evidence to prove the defendant is a PRR or to establish that the defendant is subject to a sentence enhancement previously noticed, for instance as a habitual offender.  See Dean v. State, 42 Fla. L. Weekly S769 (Fla. Aug. 31, 2017); see also State v. Collins, 985 So. 2d 985, 990 (Fla. 2008).  Thus, not all defendants will receive the relief anticipated by the removal of the PRR designation.

---

statute, Brinson's temporary detention and subsequent physical release from the prison would have qualified him as a PRR.

[7]See Cassista v. State, 57 So. 3d 265, 267 n.1 (Fla. 5th DCA 2011) ("On occasion, an offender's sentence expiration date might be relevant if for example, the offender, while committed to a state correctional facility, is temporarily transported to a hospital for treatment, or to a county jail to face unrelated charges.  If that offender's state prison sentence expires while he or she is temporarily residing in a hospital or county jail, we would have no difficulty in concluding that the offender was constructively in a state prison facility when his sentence expired for PRR purposes.").